## HIRAM BELLOWS v. HORACE B. WEEKS.[*]

*Grand List. Listers. Constitution. Taxes. Selectmen. Rate-bill and Warrant. Evidence. Towns. Practice. Verdict. Jurors.*

Listers having completed the grand list and deposited it in the town clerk's office, on or before the 15th day of May as required by law, have no further control over it, or authority in respect to it. Thereafter their relation to it is precisely the same as that of every other inhabitant in the town.

If the listers by any unauthorized acts should render the list invalid, the legislature may by an act for that purpose declare such list to be legal and valid; and such act would not be an infringement of any provision of the constitution.

Alterations in the list after being deposited in the town clerk's office, by persons other than the listers, do not make the list void. It remains legal and valid as originally made and deposited. Probably the same would be held as to alterations by the listers.

The listers having made alterations and corrections subsequent to its being deposited with the town clerk, the revised list would be made valid by an act of the legislature declaring it legal and valid as altered and corrected.

In the absence of any statute upon the subject, one selectman may properly perform the mechanical act of writing the names of the other members of the board to a certificate of assessment, being authorized by them so to do.

A warrant for the collection of a town tax would probably be good without any date. At any rate, an error in the date apparent on its face would not render the warrant invalid.

It is well settled that when an instrument is dated at a time different from that of its execution, parol evidence is always admissible to show the true time when it was executed, and when that is established the instrument takes effect from that time.

The warrant for the collection of a state tax need not be attached to the rate-bill.

If, after a portion of a tax voted for a proper purpose has been voluntarily paid under the inducement of a discount, new and unforeseen circumstances render it unnecessary to use all the money, voted to be raised, for the purpose for which it was voted, the town may then properly vote to have the whole collected and refund the surplus to the tax payers *pro rata*, or may treat it as funds in the treasury to be used for payment of other obligations.

No question can be raised in the supreme court which the exceptions show was not raised in the court below.

A verdict will not be set aside on the ground that one of the jurors that tried the case had a cause of his own pending for trial by jury at the same term, where there was no motion to discharge him.

TRESPASS in two counts, and two counts in trespass on the case, for taking and selling fitty shares of the capital stock of the First National Bank of St. Albans, the property of the plaintiff. Plea, the general issue, and notice that the defendant would justify the taking and sale at public auction, as collector of taxes for the

---

[*] Heard at the January term, 1867, and decided at the January term, 1868.

town of St. Albans, in the year 1865. Trial by jury, September term, 1866, STEELE, J., presiding.

On trial, the plaintiff proved the taking, distraining, and sale of the bank stock at public auction by the defendant, and its value estimated at $5000. The plaintiff rested, and the defendant moved a nonsuit, which motion was overruled by the court.

The defendant gave evidence tending to prove that he was collector of taxes in the town of St. Albans, in the year 1865; that on the first day of March, 1864, the town of St. Albans voted to raise a tax of twelve and a half cents on the dollar on the grand list of 1864, by which the plaintiff was assessed the sum of $86.88, and a rate-bill and warrant were made out bearing date July 13, 1864; that on the 11th day of August, 1864, the town voted to raise a tax of three hundred and fifty cents on the grand list of said town, for 1864, by which the plaintiff was assessed the sum of $2422.50, and a rate-bill and warrant were made out, the certificate of the assessment bearing date August 11, 1864, and the warrant attached thereto bearing date March 7, 1864; that on the same list was assessed a state tax and a state and school tax, which were both included in the same book or rate-bill, with but one warrant in said rate-bill, but no objection was made because the state treasurer's warrant was not produced. The warrant is dated January 1, 1865, and the assessment bears date January 1, 1864, by which it appears that the plaintiff was assessed for state and school tax, the sum of $868.75; for state tax, $41.70. These four taxes were included in three books or rate-bills, amounting, in all, to the sum of $3419.33; that the defendant offered these three rate-bills in evidence, together with the grand list of the town of St. Albans for the year 1864, and the records of the town of St. Albans for the years 1864 and 1865, showing the various purposes for which the above taxes were professed to have been raised. The plaintiff objected to the admission of each and all of them, but they were each and all admitted, subject to all legal objections. The particular grounds of objection were as follows:

First. That the certificates of assessments and the various rate-bills were not signed by the selectmen, but were signed by

but one person acting as such, he signing the names of the other two selectmen.

Second.  That while there was but one warrant attached to the rate-bills of the state and state school tax, there was nothing in the said warrant to indicate to which of the two taxes included in the same book the one warrant referred.

Third.  That the certificate of the assessment bore date on a day previous to the date of the tax itself in the school tax.

Fourth.  That the grand list of the town of St. Albans, for 1864, upon which all of the taxes purported to be assessed, had been altered after it was returned to the town clerk's office on the 15th of May, 1864, and the lists of several persons reduced so as to materially increase the amount of the plaintiff's taxes.

It appeared from said grand list that the plaintiff was assessed the sum of $69,550, $4,500 of the same being for real estate in the town of St. Albans.

The defendant introduced further testimony tending to show that the plaintiff, for three years previous to the year 1864, had had a grand list in St. Albans; that the rate-bills and warrants aforesaid were delivered to the defendant as collector of taxes aforesaid; that the defendant seasonably demanded the payment of the said taxes from the plaintiff, in writing, and the plaintiff neglected or refused to pay the same ; that the defendant season-ably posted up notices of the sale of said bank stock at public auction after having distrained the same, and the same was sold to the highest bidder for $3,450.

The defendant introduced the original demand and notice of sale of the stock, and proved that he levied regularly upon the plaintiff's property, and that his proceedings were regular up to that time, and was then going on to prove what his proceedings were subsequent to the levy, when the court refused to hear any testimony on that point from the defendant until the proceedings subsequent to the levy were questioned by the plaintiff, and ruled that the proceedings subsequent to the levy were presumed regular unless the contrary was proved.  To which no one excepted at that time, and no question was made on the point until after the case was given to the jury.

The plaintiff introduced evidence tending to show that after the grand list of St. Albans for the year 1864 was deposited in the

Bellows · v. Weeks.

town clerk's office on the 15th day of May, alterations and additions were made by the listers, and by others unauthorized by the listers, as stated more particularly in the opinion of the court.

The plaintiff also introduced testimony tending to show that at the time of the town meeting of the 11th of August, 1864, when the tax for 350 cents on the dollar on said grand list was voted, the quota of men standing against the town, and which this money was to pay, was some seventeen or eighteen more than they were ultimately compelled to furnish, after the quota had been reduced by a subsequent credit obtained for the state of Vermont; that at the meeting last above named a vote was · passed directing that the selectmen should deduct three per cent. from such of the taxes to raise bounties as should be to them paid prior to the 1st day of September, 1864; that the tax aforesaid would raise the sum of $49,000 or thereabouts; that about $31,000 was voluntarily paid into the hands of the selectmen as aforesaid on said tax before September 1, 1864, and receipt therefor given by the selectmen, and the same ultimately proved sufficient to raise the necessary bounties on account of the reduction of the quota before mentioned, but would not have been if the quota had not been reduced; that on or about the 3d day of March, 1865, the town voted that the remainder of said tax, of 350 cents on the dollar upon the grand list of 1864, should be collected from all who were delinquent, and after the whole amount was collected, the excess above what was used in paying the bounties should be refunded, to the persons who paid the said bounty tax, *pro rata*. The warrant of the 7th day of March, 1865, erroneously dated March 7, 1864, was made up then by one of the persons acting as selectmen of said town, and affixed to the assessment of said tax properly signed, and after such selectmen had applied the amount that each person had paid of the $31,000 in extinguishment of the amount that such person was assessed on said ratebill; said rate-bill and warrant were then placed in the hands of the defendant with instructions to collect the full amount of the tax standing to the respective names of such persons as had not paid their said assessment. The plaintiff offered further evidence to show that the certificates of assessment, attached to the rate-

bills aforesaid, were signed by one J. D. Soule, one of the persons acting as selectmen, and that said Soule signed the names of each of the other selectmen in his own hand writing, and that the same was done by their authority, and that all agreed on the assessment of the taxes and all that was done, before Soule signed their names.

The plaintiff introduced further testimony tending to show that the listers informed the plaintiff that his bank stock was included in the grand list, and that they had declared so to other persons; and on cross-examination two of the listers testified that they told the plaintiff that they had put him on the list at $80,000, and he might call it what he was a mind to, bank stock, bonds or any-- thing else, but testified that they did not put in his bonds or bank stock, because they were satisfied he had other property more than enough to make up the sum, which was unquestionably subject to taxation.

The defendant introduced further, testimony tending to show that the plaintiff's bank stock was not included in the list, but that the selectmen decided that they would not include it, and only listed other personal property; that the selectmen, whose names had been signed to the certificates of assessment in the rate bills, had authorized Mr. Soule to use their names whenever it was necessary in the transaction of town business, which was all the authority Mr. Soule had; that they had previously met and agreed on the assessment; that the date of "1864," as the year upon which the warrant attached to the bounty tax purported to have been issued and the state school tax to have been assessed, was not correct, and should have been "1865," and that the legislature of the state of Vermont, by an act approved November 18, 1864, had enacted that "the grand list of the town of St. Albans for the year eighteen hundred and sixty-four, as made out and corrected by the listers of said town, and all taxes assessed thereon, are hereby declared legal and valid," and that the plaintiff agreed to the amount of his list, but upon this point the testimony was conflicting.

The plaintiff made several requests to the court to charge the jury, which sufficiently appear in the opinion.

The court decided as a matter of law without submitting the same to the jury : that the grand list is to be deposited in the town clerk's office before the 15th day of May each year ; that listers have no authority to alter the same after it is thus returned, still, if deposited or amended by the listers out of time, that whatever alterations were made by the listers were cured by the act of the legislature ; that whatever alterations were made by any other person not by them authorized, would not vitiate the list, but the alterations and not the true list would be invalid ; and the plaintiff's taxes would not be rendered uncollectable because some other person was erroneously taxed, or taxed too little or too much ; that the act of one of the selectmen in signing the names of the other selectmen, in the manner it was done in this case, would not vitiate the assessment, nor render the defendant a trespasser ; that the warrant so far as the bounty tax is concerned was defective as to the date, but inasmuch as it was a mere clerical error manifest on the face of the papers by comparison with the other dates and the body of the writing itself, it would not make the officer a trespasser in taking the plaintiff's property ; so to in regard to the date of the certificate of assessment of the school tax, (state school,) signed by the persons acting as selectmen, which is also an obvious clerical error ; that the rate-bills, warrants, grand list of said town, and the records of said town of St. Albans in the year 1864, referred to, justified the defendant in taking and selling the plaintiff's property, and that they were legally sufficient for that purpose.

The court also overruled the plaintiff's objections to the collection of the bounty tax of 350 cents on the dollar, on the ground that it was not a tax raised by virtue of any vote in March 1865, but was merely a proceeding to finish the collection of the tax voted in August, 1864, instead of suspending its collection because it proved under the altered state of circumstances to be larger than required.

The court ruled that the reply of the listers to the plaintiff, when inquired of as to whether the listers had put in his bank stock, that they " had put him in the list at $30,000, and he might call it what he was a mind to, bank stock, bonds, or any

thing else," would not affect the case in any way, as to whether the stock was or was not included in the list, as the matter was finally determined by the selectmen, except that this, and the evidence relating to the agreement, should be submitted to the jury in determining whether or not the selectmen did decide not to include the plaintiff's bank stock. The court expressed an opinion that the bank stock was taxable, but whether it was taxed or not being the only question of fact in dispute, the court ruled *pro forma* that it was not taxable, so that the only question submitted to the jury was the question of fact as to whether the bank stock or bonds were included in the plaintiff's list, and the court instructed the jury that if the bank stock or bonds were included in the list of the plaintiff, he was entitled to recover, and if not included, the defendant was entitled to recover his costs.

The jury returned a verdict for the defendant. To the charge of the court and rulings of the court, and failure of the court to charge as requested, the plaintiff excepted. No exceptions were taken to the instructions of the court to the jury, upon the question which was left to the jury to decide.

The plaintiff filed a motion to set aside the verdict, for the reason that one of the jurors (McAllister) who was one of the panel that tried said cause at said term, was the defendant in a cause pending in said court to be tried by jury at said term. The cause in which said juror was the defendant was set " not for the jury by the plaintiff" before the jury was called in this case, and was continued. It appeared that the plaintiff (Bellows) by his attorney, consented to a trial by the jury, including McAllister, but the plaintiff was not acquainted with McAllister, and did not know he had a cause pending in said court. The court, WILSON, J., presiding, overruled the motion, to which the plaintiff excepted.

*E. A. Sowles, Edson & Rand,* and *Dewey,* for the plaintiff, cited upon the point made by the plaintiff as to the effect of the alterations of the grand list, *Henry* v. *Edson et al.,* 2 Vt., 499 ; *Downing* v. *Roberts,* 21 Vt., 441 ; *Stetson* v. *Kempton et al.,* 13 Mass., 271 ; *Van Rensselaer* v. *Witbeck,* 3 Selden, 517 ; *Libby*

v. *Burnham,* 15 Mass., 144; *Thurston* v. *Little,* 3 Mass., 429.
That a void tax can not be revived to a legal existence by an act
of the legislature, 1 Kent's Com., 5th Am. Ed., 455, 456, n.;
Smith's Com. on Constitutional Construction, 284, § 252, and
cases cited ; *Coffin* v. *Rich,* 45 Maine, 507 ; *Rich* v. *Flanders,* 39
N. H., 304. That one selectman had no right to sign the names
of the other two, as each acts in a delegated capacity, *Andover* v.
*Grafton,* 7 N. H., 298 ; *Reynolds* v. *Inhabitants of New Salem,* 6
Met., 343. That the court erred in saying that the warrant and
certificate of assessment were legally sufficient, and would not
render the defendant a trespasser, *Culver* v. *Hayden,* 1 Vt., 359 ;
*Brown et al.* v. *Wright,* 17 Vt., 97 ; *Chandler* v. *Spear,* 22 Vt.,
388. Also, in overruling the plaintiff's objection to the collection
of the tax of three hundred and fifty cents on the dollar. Also,
in their instructions to the jury, as to the effect of the language
of the listers to the plaintiff, " that they had put him in the list at
$80,000, and he might call it what he was a mind to," etc. The
court erred in not holding that the burden of proof rested with
the defendant, to show that he took the plaintiff's property and
sold the same, by virtue of legal rate-bills and warrants. They
should have held that the defendant had not justified. *Adkins* v.
*Brewer,* 3 Cowen, 206; *Lewis* v. *Avery et al.,* 8 Vt., 287 ; *Stet-*
*son* v. *Kempton et al.,* 13 Mass., 271 ; *Libby* v. *Burnham et al.,* 15
Mass., 144. The court also erred in overruling the motion to set
aside the verdict of the jury.

*H. S. Royce,* for the defendant.

The signing by Soule the names of the other selectmen to the
certificate of assessment, he having authority from them to do so,
does not affect the validity of the assessments. *Haven* v. *Hobbs,*
1 Vt., 238 ; *Gardner* v. *Gardner,* 5 Cush., 563. A mere mistake
or clerical error in the date of the warrant and certificate would
not invalidate them nor affect the proceedings of the collector
under them. *Bank of Whitehall* v. *Pettes,* 13 Vt., 395 ; *Com-*
*monwealth* v. *Phillips,* 11 Pick., 27 ; *Balch* v. *Shaw,* 7 Cush.,
282. The ruling of the court below, in relation to the grand list,
is fully sustained. That an act of the legislature is retrospective

in its operation does not render it unconstitutional, unless it impairs existing obligations, or disturbs vested rights. *Doe* v. *Smith et al.,* 1 Tyler, 38 ; *Bond* v. *Appleton,* 8 Mass., 471 ; *Bell* v. *Roberts,* 13 Vt., 582. An unauthorized alteration of the grand list by a stranger will not render it void as a basis of taxation. *Bigelow & Hoagland* v. *Stilphen,* 35 Vt., 521, and cases there cited. An increase of the plaintiff's taxes, occasioned by the alterations of the grand list, unless the list was rendered void thereby, would not make the defendant a trespasser ; and if it would, the mistake of ten dollars in the statement of the plaintiff's tax, which might have been corrected at any time, shows that the plaintiff has not been injured. *Waters* v. *Daines,* 4 Vt., 601 ; *Henry* v. *Chester,* 15 Vt., 460 ; *Blood* v. *Sayre,* 17 Vt., 608 ; *Inglee* v. *Bosworth,* 5 Pick., 498. The motion to set aside the verdict, and for a new trial, was properly overruled.

The opinion of the court was delivered by

PIERPOINT, C. J. This is an action of trespass, brought against the defendant to recover the value of certain property taken and disposed of by him, which property belonged to the plaintiff.

The defendant justifies on the ground that he was the constable and collector of taxes for the town of St. Albans ; that, as such collector, he had in his hand certain tax-bills and warrants, in which taxes were assessed against the plaintiff, which he was required by law to collect, and that he took the property in question and disposed of the same according to law in payment of such taxes.

The plaintiff insisted in the court below, and insists here, that the defendant fails to make out a justification, on the ground—

*First*—That the said taxes against the plaintiff were not assessed upon a legal grand list of the town of St. Albans, for the reason that the grand list of said town, for the year 1864, on which said tax was assessed, after it had been made by the listers, and deposited with the town clerk of said town, on the 15th day of May of that year, as required by law, had been materially altered by adding thereto the names of other persons and the amount of their lists ; by altering the amount at which sundry persons

were severally set in said list when it was so deposited, increasing the list of some and reducing that of others; and that these additions and alterations were made in part by the listers themselves and in part by other persons.

It appears from the exceptions that the plaintiff's evidence tended to show that such additions and alterations had in fact been made after the list had been returned to the town clerk's office. It also appears that in the fall of 1864, the legislature, by an act that was passed and went into operation on the 18th day of November, 1864, declared that "The grand list of the town of St. Albans for the year 1864, as made out and corrected by the listers of said town, and all taxes assessed thereon, are hereby declared legal and valid."

There was no evidence tending to show that the plaintiff's list had in any respect been altered or changed after the grand list had been returned to the town clerk's office.

The county court, conceding the facts to be as the evidence tended to prove, decided : " That the grand list is to be deposited in the town clerk's office before the 15th day of May, each year. That listers have no authority to alter the same after it is thus returned ; still, if deposited or amended by the listers out of time, that whatever alterations were made by the listers were cured by the act of the legislature. That whatever alterations were made by any other person, not by them authorized, would not vitiate the list, but the alterations, and not the true list, would be invalid. And the plaintiff's taxes would not be rendered uncollectable because some other person was erroneously taxed, or taxed too little or too much."

In this it is claimed by the plaintiff there was error. In determining this question, it may be borne in mind that it is not the making of the grand list of the town that imposes the obligation upon the inhabitants thereof to contribute to the public charges and expenses of government. That obligation is imposed by law, and is sometimes likened to a contract, whereby the government undertakes the protection of the individual in the enjoyment of his rights of person and property, and the individual promises to obey the laws, and to contribute according to his means to defray

the charges and expenses of the government.    Here the *theory* of
a contract seems to terminate.    The proceedings to be adopted
for the enforcement of this obligation on the part of the individual
are matters that rest entirely and absolutely with the government,
and these proceedings, we apprehend, are not in the nature of a
contract between the government and the individual, as claimed by
the counsel for the plaintiff, and which the government, having
once adopted, are not at liberty to change, alter, or abolish, at
pleasure.

The legislature of this state established a system of proceedings
for the purpose of enforcing this obligation, and prominent in this
system is the making of a grand list.    The principle upon which
it is to be made, and the course to be pursued by the persons ap-
pointed to make it, are specifically declared and pointed out;
and, among other things, it is provided that the grand list for each
year shall be completed by the listers and deposited in the town
clerk's office on or before the 15th day of May of such year, ex-
cept in those years when real estate is appraised.    The listers of
the town of St. Albans did so deposit the grand list of that town
in the year 1864.    Afterward, having discovered, probably, that
they had committed some errors in the making of it, they pro-
ceeded to correct it by making alterations thereof or additions to
it.    This, clearly, they had no legal power to do.    When they had
discharged their duties as listers, and had deposited the list with
the town clerk, they had no further control over it, or authority
in respect to it.    Thereafter their relation to it was precisely the
same as that of any other inhabitant of the town.    This principle
was expressly decided in *Downing* v. *Roberts*, 21 Vt., 441.  Whether
such act of the listers rendered the grand list void, or not, is not
the question we are now considering; but conceding, for the pur-
poses of this question, that the legal operation of such act was to
invalidate the whole list, so that no tax could legally be assessed
thereon against any of the inhabitants of the town, what then was
the effect of the act of the legislature, in the fall of 1864, declar-
ing that the said grand list, as so corrected, should be the legal
grand list of said town, and all taxes assessed thereon should
be legal ?

It is claimed on the part of the plaintiff, that in this the legislature exceeded their constitutional power, and interfered with and disturbed the vested rights of the plaintiff and other inhabitants of the town.    What vested rights of the plaintiff and others were thus disturbed, the plaintiff does not specify, and it is not easy to imagine.    If the grand list was rendered void, that would not affect the plaintiff's liability to contribute to the support of the government, or to the payment of the debts of the town.    Any creditor of the town may bring his action, obtain a judgment, and compel its payment by seizing and disposing of the property of the plaintiff or any other inhabitant of the town.

The plaintiff has no vested right in respect to this particular grand list ; he has the general right to insist that a tax shall not be assessed against him, except upon a legal grand list of the town ; but what shall, or shall not, be a legal grand list, is a matter always within the control of the legislature.    Suppose that after a grand list has been deposited with the town clerk, as required by law, it should be entirely destroyed, accidentally or designedly, can there be a doubt that the legislature would have the power to declare that the listers should proceed to make a new list in the same manner as before, except as to time, and that such list, when so made, should be the legal list of the town ?    Or if, in such a case, after the destruction of the list, the listers should, without authority, proceed to make a new one, might not the legislature, on being satisfied that such list was correctly made, declare that it should be the legal grand list ?    And we think it equally clear that if the listers, by any unauthorized acts, should render the list invalid, the legislature may, by an act for that purpose, declare such list to be legal and valid, and that such act would not be an infringement of any provision of the constitution.

But it is said the alterations made by persons other than the listers made the list void, and that this defect is not cured by the act of the legislature, as that by its terms applies only to the list as corrected by the listers ; and that the county court erred in saying " that the alterations, and not the true list, would be invalid."    It is well settled that in the case of written instruments between parties, an alteration made therein by a stranger to the

instrument does not invalidate it, but that the instrument stands good as originally made, the alteration having no effect. This principle was fully recognized and applied in the case of *Bigelow & Hoagland* v. *Stilphen*, 35 Vt., 521. And there seems to be no good reason why a more rigid rule should be applied in cases of this kind than in the case of written instruments of a private character. When a party to a written instrument alters it, he renders it void, so that he cannot enforce it as it originally stood. This rule is founded in public policy, and tends to prevent tampering with written instruments by the parties, who are under a temptation to do so : the forfeiture of the original instrument operating in the nature of a penalty. But this has no force when applied to a stranger to the instrument, and has no application to a document like a grand list, to which there are no parties in the sense in which that term is used in speaking of written instruments generally. And to hold that an illegal alteration in the grand list should render it wholly void, would punish the innocent without restraining the wrong doer ; while to treat the alterations as of no effect, and the list legal as originally made and deposited with the town clerk, saves the rights of all persons and avoids a great public inconvenience. And this principle would, perhaps, have been just as applicable in this case to the alterations made by the listers as to those made by others if the legislature had not intervened and made such alterations legal ; for after the list is returned to the town clerk's office, the listers would seem to be as much strangers to the instrument as any other persons. The cases of *Henry* v. *Edson*, 2 Vt., 499 ; *Downing* v. *Roberts*, 21 Vt., 441 ; *Thurston* v. *Little*, 3 Mass., 429, cited by plaintiff's counsel, are all consistent with this view of the case. In *Downing* v. *Roberts* it was decided that when the name and property of a person was by a stranger inserted in the grand list, after it had been returned to the town clerk, no tax could be assessed thereon and collected against such person, not upon the ground that the whole list was void, but that the transaction as to such person was void, and did not create a list against him on which a legal tax could be assessed. As the list of the plaintiff in this case remained as it was when the grand list was returned to the town clerk's office, there

seems to be nothing of which he can avail himself by way of de-fense on account of the alterations.

As the grand list was not rendered invalid, the vote of the town directing a tax to be assessed thereon was a legal proceeding, and the fact that some alterations were made therein, through the instrumentality of the listers and the legislature, after the tax was voted, and before it was assessed, could not have the effect to in-validate the tax and prevent its collection.

*Second*—It is insisted that the county court erred in deciding that the signature of the selectmen to the certificate of the assess-ment was sufficient, it appearing that one of the selectmen signed his own name thereto, and then, being authorized by the other two so to do, wrote their names to the certificate also.

It appears from the case that the three selectmen acted in con-cert in making the assessment; that in all matters that required the exercise of judgment or discretion, each acted and concurred therein down to the time when the certificate was ready for their signatures, and then the mechanical process of writing their names thereon was performed by one under the authority of the others. The principle is well settled that when one authorizes another to sign his name to an instrument, and it is so done, the legal effect is the same as though he had signed it himself in person, as said in *Havens* v. *Hobbs*, 1 Vt., 238 : " The person who thus affixes the signature is regarded not so much an agent as an instrument used to perform the act." It is not delegating an authority con-ferred by another or by law. This is not like the case of *Rey-nolds* v. *Inhabitants of New Salem*, 6 Met., 343, cited by the plaintiff. The statute of Massachusetts requires the warning for a town meeting to be signed by the selectmen of the town. In that case the warning was signed by one of the selectmen, who added to his name the words " for himself and the other selectmen," but did not attach their names to the warning. The court held that the warning was not signed as the law required, and that the action of the meeting was illegal. Then if the one had the au-thority to sign the names of the others, he did not do it, and the warning was void upon its face, and the inhabitants were under no obligation to regard it.

In this case the counsel for the plaintiff have not referred us to any provision of the statute that requires the selectmen to make or sign any certificate of the assessment, and upon such examination as I have made, I have not been able to find any. If there is no such provision, clearly there was no error in the decision of the county court of which the plaintiff can complain.

*Third*—It is claimed that the warrant for the collection of the tax voted on the 11th day of August, 1864, was void, because it bears date the 7th day of March, 1864, before the tax was voted. The exceptions state that it is apparent upon the face of the warrant that the mistake in the date was a mere clerical error in writing 1864 instead of 1865, which was the true time of issuing the warrant. We are inclined to think that a date is not an indispensable part of a warrant of this kind, but that when a warrant for the collection of a town tax is attached to the rate-bill by the selectmen as the statute requires, it is sufficient even though it has no date. But however that may be, it is well settled that where an instrument is dated at a time different from that of its execution, parol evidence is always admissible to show the true time when it was executed, and when that is established, the instrument takes effect from that time. And especially is that so when, as in this case, the instrument carries upon its face the evidence of the error and all the elements necessary for its correction.

*Fourth*—At the time the town of St. Albans voted a tax of 350 cents on the dollar, on the 11th of August, 1864, the sum that would thus be raised was necessary to pay the bounty agreed to be paid to the number of men that were then required to be raised to fill their quota ; hence, the action of the town in voting the tax was legal, and the tax was collectible. To secure a more prompt payment of the money, the town voted to deduct three per cent. from the amount of any person's tax who would voluntarily pay the same to the selectmen by the 1st day of September, 1864. Under this vote, a large majority of the tax was paid in to the selectmen, and all the tax-payers might have availed themselves of the same opportunity. As some did not, it became necessary for the selectmen to assess the tax and collect the remainder. In the meantime, circumstances transpired that relieved the town

from the necessity of raising as many men as was at first required, and rendered it unnecessary to use for that purpose the whole amount of the tax. The town at a subsequent meeting, evidently for the purpose of equalizing the burden between those who had paid their taxes and those who had not, voted that the whole of the tax should be collected and the surplus refunded to the tax-payers. This was probably the easiest and most economical method of disposing of the subject, and to us it appears entirely legal and just. The tax was not voted to raise money to be distributed to and among the tax-payers, either in whole or in part; but the tax was voted for a proper, necessary and legal purpose, and was collectible. If the happening of new and unforeseen circumstances rendered it unnecessary to use all the money for the purpose for which it was voted, the town might return the surplus to the tax-payers, to each his proper proportion, or treat it as funds in their treasury, to be appropriated to the payment of any other legal obligation the town was then under, and thus diminish future taxes.

*Fifth*—It is said the collection of the state tax was illegal, because no warrant for its collection was attached to the rate-bill, and none was produced upon the trial. This was probably an oversight on the part of the counsel.

The statute requires that when the legislature shall impose a state tax, the treasurer of the state shall immediately issue his warrant to the first constable of each town for its collection. We may assume that in this respect the treasurer performed his duty. The statute does not require that this warrant shall be attached to the rate-bill of the state tax, as it does in the case of a town tax; hence, the warrant in this case was not attached to the rate-bill, and need not have been. If an objection had been made in the county court on the ground of its non-production, it would undoubtedly have been obviated by its production, or by satisfactorily accounting for it. But the exceptions state expressly that no question of this kind was raised or passed upon in the county court. This being so, the question can not be raised in this court, as the rule is perfectly well settled, that no question can be raised here that the exceptions show was not raised in the court below.

*Sixth*—We think the county court was right in saying that what the listers said to the plaintiff in respect to the amount that they had put him into the list, and what it was for, was important only as bearing upon the question whether or not the plaintiff's bank stock was in fact included in his list, as ultimately fixed by the selectmen: and that question was for the jury.

*Seven h*—This objection is to the charge of the court to the jury. If the charge was wrong, no question can be raised here in respect to it, as it appears from the exceptions that no excep-- tion was taken to the charge to the jury upon the questions of fact submitted to them.

*Eighth*—This exception is to the decision of the court below overruling the motion to set aside the verdict. It appears that one of the jurors, who sat in the trial of this case and partici- pated in the verdict, was a party to a suit pending in the same court, that was set for trial by jury at the same term.

By an act of the legislature, passed in 1864, it is provided " that no person shall serve as a petit juror, at any term of the county court in any county in this state, at which time he may have a cause pending in court to be tried by jury at the time he is so summoned to serve as a juror, but on *motion to the court,* such juror or jurors shall be discharged from *further* serving as juror at such term of court." In this case, no motion was made for the discharge of the juror, but he continued to serve through the term; no notice was taken of the fact that he was disqualified by the statute. Shall the verdicts in which he thus participated be set aside ? We think it very clear that such was not the inten- tion of the legislature, but that any person, who has the right to avail himself of the provisions of the statute, must pursue the course pointed out by the statute ; that is, move the court to dis- charge him, and until the juror is discharged on such motion, his action will not be invalid or subject to be set aside. This con- struction is clearly indicated by the language of the act, " shall be discharged from *further serving as juror at such term*," show- ing that he would serve as juror until such motion and discharge.

By whom the motion is to be made is not now the question. The juror's adversary in the suit to which he is a party, and

which stands for trial, would seem to be the only person directly interested in his discharge.

We see no error in overruling this motion.

Other questions were made in the county court, but not being insisted upon here, are regarded as waived, and have not been considered.

Judgment of the county court is affirmed.