# State of Vermont v. Bruce A. Leavitt

[329 A.2d 627]

No. 35-73

Present: Barney, C.J., Smith, Keyser and Daley, JJ., and Shangraw, C.J. (Ret.)

Opinion Filed December 3, 1974

*Robert W. Gagnon*, State's Attorney, and *James M. Ritvo*, Deputy State's Attorney, for the State.

*Oreste V. Valsangiacomo, Esq.*, of *Richard E. Davis Associates*, Barre, for Defendant.

**Daley, J.** Bruce A. Leavitt was convicted after jury trial in district court of lewd or lascivious conduct with a child under sixteen years of age in violation of 13 V.S.A. § 2602. Post-conviction motions for judgment notwithstanding the verdict and for a new trial having been denied below, defendant now appeals to this Court. We affirm.

Viewed in the light most favorable to the prevailing party below, the State, the record reveals the following pertinent facts: On December 3, 1971, complainant, then a ten-year-old girl, had left school at 2:30 p.m. and was walking home when

a man in a blue station wagon stopped her on High Hoburn Street in Barre and asked her if she wanted a ride. She declined at first but later said, "I guess so" and got into the car. The man drove her through town and out past the airport and then turned around and took her back to her house on Foster Street. During the course of this ride, which lasted approximately one hour, the man asked the complainant if she had a boyfriend, asked her to sit on his lap, and placed his hand on her knee. At one point he asked her to close her eyes and then kissed her on the lips.

Complainant placed her time of arrival at her house at "around quarter of four" because a television serial which occupied the 3:30 to 4:00 p.m. time slot was in progress and continued on for some time after she got home. Complainant's mother arrived home very shortly thereafter, "between quarter of four and ten of", and was told by complainant's older sister that complainant had just been brought home by a stranger.

That evening a complaint was lodged with the Barre City Police Department, and the police were given a description of the man and the car he had been driving. The man was described as being in his early thirties, with brown hair and protruding, separated front teeth. Complainant stated that he had been wearing a brown coat, checkered pants, and boots that resembled cowboy boots. The vehicle was described as a blue station wagon with a light colored top which had a lawnmower in the back and a pair of sunglasses and pack of cigarettes on the dashboard.

The following morning, December 4, Officer Ronald West of the Barre City Police Department commenced an investigation of the matter. During the course of this investigation he was informed by the Montpelier Police that the description given him by the complainant fit defendant Bruce Leavitt. Officer West secured police photographs of Leavitt and four other men and proceeded to complainant's home. Complainant there identified the defendant from the pictures shown to her; this identification was repeated later that evening at police headquarters.

Officers dispatched to defendant's residence on the afternoon of December 4 found a light blue, or aqua Ford station wagon with snow on the roof. In the back of the vehicle was

a power lawn mower, and a pair of sunglasses was found on the dashboard. Defendant was subsequently arrested and brought to trial with the result indicated.

The first contention on appeal is that complainant's identification of defendant at trial was tainted and that the lower court's failure to exclude this testimony deprived defendant of his right to due process of law. Two independent sources of this taint are alleged. First, it is argued that the photographic identification procedure was "impermissibly suggestive" in that defendant's picture was the only one which presented a front view of the subject smiling; thus his photograph alone demonstrated the single identifying feature, protruding and separated front teeth, which characterized complainant's description. Secondly, it is urged that the in-court identification was further tainted by an event which occurred in the corridor outside the courtroom just prior to trial. Complainant spotted the defendant there: "First, I saw him and I thought it was him." She then asked her father if that was "the man", and he responded, "Yes, I guess so."

■  The standard to be applied in examining photographic identification procedures was clearly enunciated by the United States Supreme Court in *Simmons* v. *United States*, 390 U.S. 377, 384 (1967):

> [W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

■■  The photographic identification procedure in the instant case did not reach this level of suggestiveness. No contention is advanced here that Officer West was guilty in any way of interference or suggestion during the time when the pictures were presented to complainant. The evidence indicates that the photographs were simply spread out in front of her and she was asked if she recognized the person with whom she had taken a ride the previous afternoon. The only challenged aspect of the identification procedure is the presence of only

one picture, the defendant's, with an open, smiling view. Officer West selected pictures of four other individuals of the same general age, build, and hair length. While he did not come up with a picture of a man fitting this same general description whose mouth was open, it is worth noting his observation that "very, very seldom" does one smile when having a police photograph taken. Moreover, after the complainant pointed out the defendant in open court, the procedures of the photographic identification were brought into evidence by defendant's counsel, as were the pictures themselves, and defendant's counsel argued the suggestiveness issue to the jury in his closing argument. These factors weigh against defendant's contentions for, as the Court in *Simmons* noted, "[t]he danger that the use of the [photographic identification] technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." *Simmons* v. *United States, supra* at 384.

■ The circumstances of complainant's dialogue with her father after noticing the defendant in the corridor outside the courtroom just before trial were similarly conveyed to the jury during the cross-examination of complainant by defendant's counsel, and they, too, presented a proper factor for the jury to consider in evaluating complainant's in-court identification. And it is important to note that the subject dialogue was initiated by complainant and that her inquiry, interestingly enough, was based upon only a *side* view of the defendant.

We are satisfied, on the record before us, that complainant's identification at trial was based upon her observation of the defendant at the time the offense was committed. Her observations stemmed from a close range view of defendant for a considerable period of time, and the description which she gave to the police on the date of the offense was consistent with her testimony in trial. *See State* v. *Mayer,* 129 Vt. 564, 283 A.2d 863 (1971). The lower court did not err in admitting the in-court identification.

■■ Defendant next alleges error in the admission of certain testimony concerning the length of time it takes to drive from complainant's house to a certain grocery store in

Middlesex. He maintains that the testimony of Officer West as to the fastest and most direct route was excludable as improper opinion testimony and that other evidence as to time checks taken on various routes from complainant's home to the Middlesex store was inadmissible because the State failed to show that the conditions at the times of the checks were the same or similar to those on the day of the offense. The admission of this improper evidence, defendant argues, was highly prejudicial to his defense of alibi.

The alibi defense was based upon the theory that defendant was at the Middlesex store at a time when it would have been impossible for him to be there if he had committed the crime charged during the time frame constructed by the State's evidence. The evidence offered by the State was introduced not to show which route was fastest or the actual time it took to take each route, but rather to establish that it was not *impossible* for the defendant to have committed the offense charged and still have made it to the Middlesex store by a certain time. The evidence of the time checks was relevant and admissible for this purpose; it provided a foundation for and cured any error in the prior admission of opinion testimony. The issue of same or similar circumstances was not raised below and is therefore not properly for our consideration. Moreover, this factor merely presented a question of weight to be considered by the jury.

■ During the *voir dire* examination, the State's Attorney posed the following question to the jury panel:

> Ladies and gentlemen, has anyone in your family or, to your knowledge, a close relative or anybody ever had something such as we are about to consider occur in their family and would this affect your judgment in this case?

No response to this question is indicated by the record. Defendant made a post-conviction motion for a new trial which was supported by the affidavit of a woman who was the personal friend of one of the juror's and his family. The affidavit stated that the affiant had known the juror for thirty-six years, that the juror's daughter had been the victim of a sexual assault "around twenty years ago" (when she was about five years old), and that the affiant recalled discussing the matter

with the juror's wife and daughter twelve or thirteen years ago. The affiant did not recall discussing the matter with the juror himself.

The court below conducted hearings during which the affiant and the juror's daughter were examined under oath. The affiant's testimony was in accordance with her prior affidavit. She testified that she never discussed the incident with the juror and could not recall whether he had been present when she had discussed the matter with the juror's wife and daughter at "family gatherings". The juror's daughter testified that she had never been sexually molested by any man and that she had never discussed such a matter with her father or anyone else. The juror's wife was seriously ill at the time of these hearings and was not available for inquiry.

After listening to the testimony of these two witnesses, the trial court denied the motion for a new trial and entered specific findings of fact. It found that there was no indication that the juror in question had ever been given reason to believe that his daughter had been sexually molested. It further stated that it believed the testimony of the juror's daughter and could not find that "there was any impropriety in respect to the *voir dire* examination or that [the juror] should have been disqualified . . . ."

Defendant urged the trial court to call the juror himself to testify and contends that its refusal to do so constituted error.

■ The ruling of the lower court has a sound legal basis. The rule in Vermont with respect to the direct inquiry of jurors as to possible external misconduct is clear: "To be sure, the corrective procedure must be cautiously administered. And it should be resorted to only where there has been a convincing demonstration of prejudicial wrongdoing . . . ." *Bellows Falls* v. *State Highway Board*, 123 Vt. 408, 413, 190 A.2d 695 (1963). It is clear from the trial court's findings of fact that it was of the opinion that no such demonstration had been made. This determination was based in large part on the court's evaluation of the credibility of the affiant and the juror's daughter, and this evaluation was within its exclusive province. The determination that no convincing demonstration of prejudicial wrongdoing had been made is amply supported

by the record, and the decision not to interrogate the juror was thus without error.

*Affirmed.*