502 A.2d 1096

**ADMIRAL BUILDERS SAVINGS AND LOAN ASSOCIATION et al.**

v.

**SOUTH RIVER LANDING, INC. et al.**

**No. 461, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Jan. 14, 1986.

Sidney G. Leech (Laura C. McWeeney and Semmes, Bowen & Semmes and William M. Levy, on brief), Baltimore, for appellant.

Wayne T. Kosmerl (Kevin M. Schaeffer and Council, Baradel, Kosmerl & Nolan, P.A., on brief), Annapolis, for appellee.

Argued before WEANT, BISHOP and ROSALYN B. BELL, JJ.

WEANT, Judge.

This appeal is from a declaratory judgment action in which the Anne Arundel County Circuit Court, interpreting a release fee provision in a mortgage agreement between the parties, found that those fees were not due upon prepayment of the loan. Appellants, Admiral Builders Savings and Loan Association ("Admiral") and Pioneer Financial Services, Inc.,[1] raise two questions for review:

1. Did the trial court err in finding that there was an ambiguity in the mortgage or promissory note so as

---

[1] The mortgage loan was assigned to Pioneer Financial Services, Inc. in 1984.

to allow the introduction of parol evidence as to the intent of the parties?

2. Did the trial court err in finding that appellants were not entitled to the $310,000.00 in release fees under the circumstances of this case?

On 23 July 1982, appellees, South River Landing, Inc. and Gary G. Pyles, borrowed $3,570,000 from Admiral in order to develop land in Anne Arundel County. The loan was evidenced by a promissory note and secured by a mortgage. The mortgage recites that the land will be divided into eighty-four individual condominium sites; it further provides for removal of the mortgage lien from individual condominium sites upon payment of a specified principal amount and any interest due plus a "release fee" of $5,000 per site. The mortgage also states, however, that the principal of the loan may be prepaid without penalty. Prior to the instant dispute, appellees sold twenty-two individual sites and in each instance paid a release fee.

On 13 August 1984, appellees prepaid the entire loan, thus precipitating a dispute as to whether they were required to pay $310,000 in release fees in order to discharge the mortgage from the remaining sixty-two sites. Appellants contend that the release fees are due and payable regardless of the circumstances under which the sites were released; appellees argue that the parties intended that the release fees be paid only on sites that were individually sold and released prior to the extinguishment of the mortgage and not on the aggregate number of sites remaining unsold upon prepayment of the mortgage. The trial court found the release fee provision language of the mortgage agreement [2] ambiguous and heard, over objection, parol evidence

---

2. The Mortgagor shall have the right, prior to default in this Mortgage, to prepay the principal of this loan in whole or in part without penalty. The Mortgagee agrees to release from this Mortgage the eighty-four (84) individual condominium sites shown in Regimes I through XI on the Plats entitled "Plat One of Two South River Landing" and "Plat Two of Two South River Landing" upon payment on the principal of this Mortgage of the sums set forth in

pertaining to the parties' intent. This evidence convinced the court that the parties did not intend payment of release fees upon refinancing of the loan. We shall affirm.

### Parol Evidence

"Stated broadly, the [parol evidence] rule is that as a matter of substantive law, parol evidence is inadmissible to vary, alter, or contradict a writing which is complete, unambiguous and valid, where no fraud, accident or mistake is claimed." *Glass v. Doctors Hospital, Inc.*, 213 Md. 44, 57, 131 A.2d 254, 261 (1957). "[B]ut where doubt arises as to the true sense and meaning of the words themselves or difficulty as to their application under the surrounding circumstances, the sense and meaning of the language may be investigated and determined by evidence *dehors* the instrument." *Eastover Stores, Inc. v. Minnix*, 219 Md. 658, 666, 150 A.2d 884, 888 (1959).

1.

The determination of ambiguity in a writing necessarily involves an interpretation of the writing. Although the signification of a document is said to be a question of law for the court, *Mercantile-Safe Deposit and Trust Co. v. Delp and Chapel Concrete and Construction Co.*, 44 Md.App. 34, 41, 408 A.2d 1043, 1048 (1979), on appeal we defer to the trial court's finding under the clearly erroneous standard of Md.Rule 1086. *Stefanowicz Corp. v. Harris*, 36 Md.App. 136, 147 n. 3, 373 A.2d 54, 61 n. 3 (1977), *cert. denied*, 281 Md. 738 (1977) ("when construing the language of a written document, . . . we are still bound by the clearly erroneous rule, even though the document can be interpreted by this Court as well as the trial judge"). Therefore, a trial court's conclusion that ambiguity exists in a writing is

---

"Exhibit B" which is attached hereto and made a part hereof together with any interest then due and owing under this Mortgage and a release fee of $5,000.00 per site as therein set forth, which fee shall be construed as additional interest.

an exercise in judgment which should be overturned only if no reasonable suggestion of ambiguity can be entertained.

■ Whether the court was "clearly erroneous" is an inquiry we answer not by re-examining the writing to see if *we* think it ambiguous; we review merely to determine whether the trial court's decision is based on evidence legally sufficient to support such a finding. Here the trial court found that the document, standing alone, evidenced ambiguity and a lack of clarity as to whether release fees were payable upon prepayment of the entire loan. This finding is not clearly erroneous. The release fee language speaks only of partial releases from the mortgage lien. It does not provide for the situation presented by this dispute—extinguishment of the entire loan. In addition, the no prepayment penalty clause and the characterization of the release fees as "additional interest" [3] both add uncertainty.

■ While we agree with the trial court's finding of ambiguity on the face of the agreement, we are also mindful that, in the initial determination of ambiguity, *vel non*, extrinsic evidence need not be excluded from the trial court's consideration (so long as that evidence does not vary, alter, or contradict the plain meaning of the writing) because, until the evidence is heard, ambiguity or the lack thereof cannot be fully appreciated. *See* Restatement (Second) of Contracts § 214(c) comment b (1979). Indeed, "[t]here are comparatively few cases in which a bare inspection of the instrument will show that no proper extrinsic evidence will afford any light on the *construction* of the writing." *Lambdin v. Dantzebecker*, 169 Md. 240, 246, 181 A. 353, 356 (1935) (emphasis added). *See generally*, 3 *Corbin on Contracts* § 579 (failure to allow extrinsic evidence for interpretive purposes means only that the judge is limited to the extrinsic evidence of his own linguistic experi-

---

**3.** In oral argument, appellant admitted uncertainty as to how interest can be due when the principal has been paid.

ence without the benefit of that of the parties); J. Calamari and J. Perillo, *The Law of Contracts* § 3–13 (2d ed. 1977) ("[B]efore the parol evidence rule can be invoked to exclude evidence, the *meaning* of the writing must be ascertained since one may not determine whether a writing is being contradicted . . . until one knows what the writing means." (Emphasis in original.)).

In support of the above proposition, Calamari and Perillo cite a Maryland case, *Shuman v. Gordon Investment Corp.*, 247 Md. 265, 232 A.2d 256 (1967). Calamari, *supra* § 3–13, at 125 n. 59. *Shuman* involved the construction of a lease. The tenants-appellants leased certain property under an agreement conveying, *inter alia*, "the entire premises." After the tenants took possession, the landlord expressed his intention to paint an advertising sign on the exterior wall of the leased premises, claiming that it was the parties' understanding prior to the execution of the lease that the rental of the building did not include use by the tenants of the exterior walls. The tenants denied such a prior agreement and relied instead on the language of the lease and on *Needle v. Scheinberg*, 187 Md. 169, 49 A.2d 334 (1946), which states that absent any limitation within the lease itself, the lease of a building includes the exterior walls. *Id.* at 173, 49 A.2d at 336. In affirming the chancellor's finding that the landlord had reserved the right to use the exterior walls, the Court of Appeals said that the tenants, in relying on the language of the agreement and on *Needle*, "overlook the fact that the meaning of the lease, without the aid of extrinsic evidence to explain it, does not certainly reveal the intention of the parties." *Shuman*, 247 Md. at 271, 232 A.2d at 259. Further, the Court stated: "[I]f *any* doubt arises from the language of a contract as to the intention of the parties, extraneous evidence may be admitted to aid the court in comprehending its meaning." *Id.* at 272, 232 A.2d at 259–60 (emphasis added), quoting *Sommers v. Dukes*, 208 Md. 386, 118 A.2d 660 (1955).

When extrinsic evidence is admitted, it is often difficult to ascertain whether it is coming in *after* the primary determi-

nation of ambiguity (in order to explain the ambiguity) or if consideration of the evidence aided in the preliminary determination of ambiguity *vel non.* In this regard, *Stanbalt Realty Company v. Commercial Credit Corporation,* 42 Md.App. 538, 401 A.2d 1043 (1979), is instructive. *In Stanbalt,* neither party contested the ultimate construction of a contractual phrase found ambiguous in the first instance by the trial court. Instead, the dispute focused only on the correctness of the trial court's *initial* finding of ambiguity. In affirming, this Court commended the trial court for resisting the snare of grammatical niceties in interpreting the contract and for moving on to resolve the ambiguity with the help of extrinsic evidence. *Id.* at 545–46, 401 A.2d at 1047. More important, however, is the procedure followed by the trial judge who, *"after reading the two depositions and hearing argument on the motion for Summary Judgment,* concluded that the clause was ambiguous...." *Id.* at 541, 401 A.2d 1045 (emphasis added). Clearly the procedure followed by the trial court, and approved by this Court, involved use of extrinsic evidence in the primary finding of ambiguity.

In sum, the decision regarding the existence of ambiguity in a writing is the first in a two-step process. On the one hand, extrinsic evidence may be offered but, of course, when the proffered evidence fails to convince the judge that the writing is ambiguous, or when the evidence varies, alters, or contradicts the clear meaning of the writing, the parol evidence rule requires that the extrinsic evidence be excluded from the factfinder. *See e.g., Helferstay v. Creamer,* 58 Md.App. 263, 473 A.2d 47 (1984). On the other hand, when the interpretive evidence can be construed as consistent with the language of the writing, the court may decide, depending on the strength of that evidence, that an ambiguity exists. At that stage, the factfinder may, as in *Stanbalt,* use the extrinsic evidence further, *i.e.,* to resolve the ambiguity.

Consequently, in the instant case, the ambiguity in the writing indicated by the proffered evidence discussed in part 2 *infra* stands, together with the ambiguity found by the trial court on the face of the mortgage, as additional support for affirming the trial court on this issue.

### 2.

■ "In the event of an ambiguity in the terms of a contract, the court must necessarily look to the intention of the parties at the time of the making of the contract." *Hardy v. Brookhart,* 259 Md. 317, 326, 270 A.2d 119, 125 (1970). In searching out the parties' intent, the court as factfinder must consider all evidence, including extrinsic evidence, which has been found relevant on the issue and which does not vary or contradict the language of the agreement. In turn, this Court applies the clearly erroneous rule to determine whether the evidence supports a finding for appellees with regard to the intended meaning of the release fee provision of the mortgage agreement.

■ The trial court heard the testimony of the two parties who negotiated the mortgage agreement—Mr. Gary G. Pyles and Mr. Gilbert N. Evans, who, at the time of the negotiations, was vice president in charge of mortgage lending for Admiral. Both testified that it was the parties' intent that the release fees would not be due upon prepayment of the loan. Evans also testified that he knew of appellees' intention to refinance the loan as soon as possible, and that the release fee provision was intended as an incentive to pay off the loan quickly in order to avoid payment of the fees. On cross-examination, Evans admitted that he has since left Admiral and that he acted as an agent for appellee Pyles in the refinancing of the loan. In spite of this, the trial court chose to believe both Evans and Pyles. The trial court also found that, as vice president in charge of loan operations, sole negotiator with Pyles, and author of the letter of commitment for the loan, Evans had apparent authority to make representations concerning the release fees provision.

The trial court's findings are consistent with that evidence on the record which he chose to believe. He saw the witnesses, heard their testimony, and judged their credibility. In the absence of a clear abuse of discretion, and here we have no such indication, it is not for us to second guess him on that choice. Md.Rule 1086.

*JUDGMENT AFFIRMED.*

*COSTS TO BE PAID BY APPELLANT.*