### In re Douglas A. Nash

[614 A.2d 367]

No. 88-484

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed June 21, 1991

Motion for Reargument Denied May 21, 1992

---

*Michael Rose*, St. Albans, for Petitioner-Appellee.

*Deborah A. Barnard*, Bennington County Deputy State's Attorney, Bennington, and *Jo-Ann Gross*, Office of State's Attorneys and Sheriff's Department, Montpelier, for Respondent-Appellant.

**Gibson, J.** The State of Vermont appeals from a post-conviction relief order vacating petitioner's conviction for attempted sexual assault and granting a new trial, based on the bias of a juror. We reverse.

## I.

Following his conviction on October 15, 1982, petitioner moved for post-conviction relief, contending that a juror at his trial "did withhold information [during the voir dire proceedings], and the information withheld was 'capable of producing prejudice.'" At the voir dire the juror in question, Pamela Corcoran, testified in open court that her knowledge about the crime was limited: "All I heard, was that it happened. I didn't hear of any particulars." When she was asked whether it would be "fair to say, that you really don't know anything about the case, other than a charge was brought," she answered, "Right."

During subsequent voir dire in chambers, the prospective juror testified that "[a]ll I heard, was that an incident had happened on Main Street in an apartment. That was it."

After conviction, petitioner learned that Corcoran had heard of the events in question through a conversation with Donna Bailey, a State's witness. Depositions were taken of both Corcoran and Bailey at the Bennington County Courthouse. Asked about any conversation with Bailey, Corcoran testified:

> Okay. As a matter of fact she said to me as I was walking down the street—did you hear that somebody tried to get raped last night and I said no. She said they did next door and that was the end of the conversation.

Bailey's account of the brief conversation was:

> Q: [C]an you just tell us basically what you said and what she said to you, what you told her and—?
>
> A: [Corcoran] just asked me—she heard a lot of screams— and she asked me what went on and I told her what I saw and that I heard a lot of loud screams and stuff.
>
> . . . .
>
> Q: Okay. Did you tell her that you were a witness to some of this?
>
> A: Yeah I told her I saw everything.
>
> . . . .
>
> Q: [Corcoran] said that she heard screams?
>
> A: Yes. I said yes it was the tenant right next door and that I saw everything from my bedroom window, what went on, the screams and everything. I thought at first it was screams from the Villager [sic] because you hear all kinds of noises and I just let it go and it just kept getting louder hollering and yelling.

At the conclusion of her deposition, Bailey was asked:

> Q: And when you say you saw everything did you tell [Corcoran] what you saw?
>
> A: No I didn't say anything—what I just told you—I didn't say anything.
>
> Q: So you didn't say I saw the man doing this and the girl doing that?
>
> A: No.

Based on these depositions, the trial court concluded that Corcoran "did withhold information [during voir dire], and the information withheld was 'capable of producing prejudice.'" The court also relied on the additional factors that "[t]here is even an indication that [Corcoran] heard the victim's screams during the actual commission of the crime" and that Corcoran testified in the deposition that Bailey had a way of "stretching things" and was a "gossip" and "busybody," despite stating at voir dire that there was nothing that would cause her to give greater or lesser weight to Bailey's testimony at trial. The court ruled in petitioner's favor on his motion for post-conviction relief, vacated the conviction, and granted a new trial. The present appeal ensued.

The State argues on appeal that Corcoran truthfully answered every question put to her, and that her failure to reveal the identity of the person who told her of the incident in question was the result of defense counsel's failure to inquire. Petitioner counters that the reviewing court's findings are not clearly erroneous and that they reasonably support the court's conclusions.

## II.

■ ■ Initially, we address whether the reviewing court's findings are adequately supported by the record. In order to address the issue, we must ascertain the appropriate standard of review. Normally, the trial court is the judge of the credibility of the witnesses, and its factual findings will not be set aside unless clearly erroneous. See *In re Fadden*, 148 Vt. 116, 119, 530 A.2d 560, 562 (1987) (post-conviction court's findings of fact will be upheld unless clearly erroneous); *State v. Leavitt*, 133 Vt. 35, 41, 329 A.2d 627, 631 (1974) (in ruling on claim that juror failed to disclose information in response to voir dire question, evaluation of credibility is within the "exclusive province" of the trial court). Further, the trial court is entitled to draw reasonable inferences from the testimony it receives.

■ This standard is appropriate in the typical case because the trial court sees and hears the witnesses as they testify, and is able to observe their body language and hear the inflections of their voices. The court's vantage point enables it to evaluate the nuances that do not appear in the appellate record.

But this is not a typical case. There was no live testimony before the trial court in the post-conviction proceeding. By stipulation of the parties, the entire evidence consisted of transcripts of the depositions of Pamela Corcoran, Donna Bailey and attorney David Howard, plus a partial transcript of the voir dire of the jury at petitioner's 1982 trial. The stipulation provided that "[n]o further evidence shall be submitted by the parties." Under these circumstances, the trial court is in no better position than we to evaluate the credibility of the witnesses, and the question arises as to whether we should defer to its judgment.

There is a divergence of views on this issue. The federal courts were split on the question for years, to the point where the authorities were described as being "indescribably confused." 9 C. Wright & A. Miller,. Federal Practice and Procedure: Civil § 2587, at 740 (1971). This confusion in the federal arena was swept away in 1985 by two nearly concurrent strokes: the decision of the United States Supreme Court in *Anderson v. City of Bessemer City*, 470 U.S. 564 (1985), and an amendment to Federal Rule of Civil Procedure 52(a).

In *Anderson*, the Court held that the clearly erroneous standard applied even when the court's findings did not rest on credibility determinations, but were based instead on physical or documentary evidence or inferences from other facts. 470 U.S. at 574–75. The Court, however, did not elevate documentary evidence to quite the same plane as testimonial evidence, stating:

> When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.

*Id.* at 575. Shortly thereafter, Federal Rule 52(a) was amended to read, in pertinent part: "Findings of fact, *whether based on oral or documentary evidence,* shall not be set aside unless clearly erroneous." (Underlined portion added.)

State appellate courts remain divided on this issue. Some courts follow the federal standard, see, e.g., *Avondale on Hayden, Inc. v. Hall*, 104 Idaho 321, 324–25, 658 P.2d 992, 995–96

(Ct. App. 1983); *Admiral Builders Savings & Loan Ass'n v. South River Landing, Inc.*, 66 Md. App. 124, 128–29, 502 A.2d 1096, 1098–99 (1986), while others will not accord deference to findings that are based solely on documentary evidence. See, e.g., *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1278 (Del. 1989); *Commonwealth v. Woods*, 382 Mass. 1, 8, 413 N.E.2d 1099, 1104 (1980); *In re Rosier*, 105 Wash. 2d 606, 616, 717 P.2d 1353, 1359 (1986).

Vermont has not amended V.R.C.P. 52 to follow the amendment to the federal rule, nor has this Court addressed the question of whether to apply a different standard to findings dealing with documentary, as opposed to testimonial, evidence. In considering this matter, we believe the better policy is to apply the "clearly erroneous" test to all trial court findings whether based on live testimony or on documentary evidence. This approach is less likely to encourage appeals designed merely to elicit a second opinion, and it accords with the plain language of V.R.C.P. 52 that "[f]indings of fact shall not be set aside unless clearly erroneous." Further, it is consistent with the roles generally considered appropriate for trial and appellate courts.

In determining whether a trial court's findings are clearly erroneous, we noted recently that "[u]nder the classic formulation, a finding is ' "clearly erroneous" when *although there is evidence to support it*, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *In re Quechee Lakes Corp.*, 154 Vt. 543, 554 n.10, 580 A.2d 957, 963 n.10 (1990) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)) (emphasis in *Quechee*). In the instant case, we conclude that the trial court's findings are clearly erroneous in certain key respects. In its decision, the court found that Corcoran stated at voir dire that she did not know the witness, Bailey, but that later during voir dire she admitted she did know her through their children, who had attended the same school. The transcript does not corroborate the court's finding. In fact, at the first mention of Bailey's name during voir dire, Corcoran immediately identified her as an acquaintance, and she never thereafter denied knowing her. The trial court's erroneous finding could well have led it to misjudge Corcoran's credibility.

Of greater concern is the court's finding that Bailey "testified that she had related to Ms. Corcoran everything she had seen and heard that night." Corcoran testified in her deposition, however, that Bailey did not discuss the details of her observations with her, and Bailey later corroborated this statement in her own deposition. As previously mentioned, at the conclusion of her deposition, Bailey was asked:

Q: And when you say you saw everything did you tell [Corcoran] what you saw?

A: No I didn't say anything—what I just told you—I didn't say anything.

Q: So you didn't say I saw the man doing this and the girl doing that?

A: No.

It is readily apparent that Bailey was clarifying an answer given earlier by her regarding her discussion with Corcoran. The trial court, however, ignored or overlooked this more precise explanation, and read into the brief encounter between the two women more than the evidence warranted. Thus, although there is some evidence to support the court's finding that "Corcoran received a detailed account of the attempted rape before she was selected as a juror," the entire evidence leaves us with the "definite conviction" that the court's finding was clearly erroneous. This finding, therefore, cannot serve as the underlying basis for the court's ultimate conclusion.

Although we conclude that several of the trial court's findings are clearly erroneous, we must still determine whether there is reversible error, in light of the evidence and remaining findings. The controlling issue is whether the evidence establishes a bias on the part of Corcoran or whether she could decide the case solely on the evidence presented at trial. See *State v. Hohman*, 138 Vt. 502, 510, 420 A.2d 852, 857 (1980), *overruled on other grounds, Jones v. Shea*, 148 Vt. 307, 308–09, 532 A.2d 571, 572 (1987). If bias is established, Corcoran must be disqualified, and the case retried. *Id.* at 511, 420 A.2d at 858. But the case law recognizes that there is a difference between knowledge and bias; "the mere fact that a juror has knowledge of a prior verdict or other fact relating to the defendant does not disqualify her as a matter of law." *Id.* at 511–12, 420 A.2d at 858;

see also *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) ("It is not required, however, that the jurors be totally ignorant of the facts and issues involved."); *State v. Doleszny*, 146 Vt. 621, 622, 508 A.2d 693, 694 (1986) (per curiam) ("Knowing a witness does not automatically require removal of a prospective juror, particularly where there is no reason for the court to doubt the juror's belief that [s]he will be impartial."). "There must be a demonstrable showing of prejudice or of the existence of circumstances capable of producing prejudice and not mere speculation." *State v. Dragon*, 135 Vt. 168, 170, 376 A.2d 12, 13–14 (1977) (citations omitted). To warrant a new trial, "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).

 In the instant case, the evidence does not demonstrate that Corcoran failed to answer honestly any of the questions that were put to her, nor does it show bias on her part. Corcoran stated during voir dire that she could treat Bailey's trial testimony the same as that of other witnesses without giving it more credibility than the others', that she had formed no opinion about the case, and that she could come to an impartial verdict based on the evidence. If there were any predisposition by Corcoran with respect to Bailey's testimony, it could only have been to view it with some skepticism because of Bailey's tendency, in Corcoran's words, "to tell people everybody's business" and to be a "busybody."[1] This is a far cry from being prejudiced against petitioner, and does not warrant the retrial of an eight-year-old case where the evidence for conviction "was strong on all three [subdivisions of the statute]." *State v. Nash*, 144 Vt.

---

[1] The dissent theorizes that Bailey's testimony was "not entirely pro-State" because in Corcoran's deposition she stated that Bailey told her "somebody tried to get raped last night." The dissent interprets this statement as suggesting that Bailey believed the victim was partially responsible for the attempted rape, influencing Corcoran to discount that viewpoint to the prejudice of petitioner. Yet, the dissent makes no mention of the colloquy immediately following between petitioner's attorney and Corcoran:

427, 434, 479 A.2d 757, 761 (1984).[2] There was no valid basis for a challenge for cause. Accordingly, we are unable to hold that petitioner met his burden of showing that the jury (and Corcoran, in particular) was unable to decide the case solely on the evidence presented at trial, or that there were circumstances capable of prejudicing the deliberative function of the jury. See *State v. Onorato,* 142 Vt. 99, 106–07, 453 A.2d 393, 396–97 (1982).

## III.

■■ ■■ In any event, the record discloses that petitioner waived any objection he had to Corcoran as a juror. It is the obligation of counsel to examine jurors on voir dire in order to ascertain their qualifications and bias, if any, and then seasonably raise any objection to any member of the panel. *State v. Percy,* 156 Vt. 468, 480, 595 A.2d 248, 255 (1990); V.R.Cr.P. 24(a), (b). The right to challenge a juror is waived by a failure to object before the jury is impaneled if the basis for the objection is known or might, with reasonable diligence, have been discovered during voir dire. See *Robinson v. Monsanto Co.,* 758 F.2d 331, 335 (8th Cir. (1985); *Commonwealth v. Fudge,* 20 Mass. App. Ct. 382, 389, 481 N.E.2d 199, 204, *rev. denied,* 396 Mass.

---

Q: Do you remember [Bailey's] exact words? If you can't remember the exact words then give your best recollection.
A: A girl almost got raped last night, and that was it.
Q: This is what she said to you on the sidewalk?
A: Yes.

By ignoring or overlooking the entire testimony of Corcoran, the dissent imports a meaning to it that clearly is not there.

[2] This is petitioner's third petition for post-conviction relief. See *In re Nash,* 149 Vt. 63, 539 A.2d 989 (1987); *In re Nash,* 146 Vt. 259, 499 A.2d 785 (1985). Following the trial court's decision herein, the court granted petitioner's motion for release pending appeal, conditioned on his reporting regularly to the Bennington Police Department and his residing and remaining in Bennington County. Petitioner never reported to the Bennington Police Department after his release, however, but instead took up residence in the State of New Hampshire. These actions, of course, have no bearing on the issues raised in this appeal, but they do reveal an attitude of contempt for the law of this state that is difficult to ignore. The record further shows that in December of 1988 the trial court granted the State's motion for stay of judgment, and in February of 1989, an arrest warrant was issued.

1102, 484 N.E.2d 102 (1985); *Commonwealth v. Shirey*, 333 Pa. Super. 85, 105, 481 A.2d 1314, 1325 (1984), *overruled on other grounds, Commonwealth v. Anderson*, 379 Pa. Super. 589, 594–98, 550 A.2d 807, 810–11 (1988); see also *McKinstry v. Collins*, 74 Vt. 147, 162, 52 A. 438, 442 (1902) (new trial denied on ground attorney waived right to object to possible juror bias by going ahead with trial without objection after learning about association of juror with opposing party); *Bellows v. Weeks*, 41 Vt. 590, 606 (1869) (verdict will not be set aside on ground that one of jurors had a cause of his own pending for trial by jury at the same term, where counsel made no motion to discharge him).

In the instant case, petitioner was put on notice at the voir dire that Corcoran had talked with "someone" about the alleged rape the day following the incident. In response to inquiries from the state's attorney as to whether any of the jurors had heard anything about the incident, Corcoran said that "someone" had mentioned it to her, but all she had heard was that it had happened and she didn't hear any of the particulars. She further answered, "No," when questioned whether she was told anything that supposedly factually occurred, a position she has consistently maintained. While it might have been better had Corcoran volunteered that Bailey was the "someone" who had talked with her on the street, nevertheless, counsel for petitioner made no effort to follow up on the details of the encounter. Reasonable inquiry would have disclosed the name of the person and the extent of the conversation. The record, including her deposition testimony, does not justify a supposition that Corcoran would not have answered such questions honestly and truthfully. She answered truthfully and readily enough when asked whether she knew Bailey. By failing to pursue this line of inquiry and learn what could readily have been discovered, petitioner waived his right to object to the seating of Corcoran as a juror.

*Reversed.*

**Dooley, J.**, dissenting. I concur in the Court's use of a clearly erroneous test to evaluate the findings of the trial court. Use of this standard of review, even in the absence of testimonial evidence, is most consistent with the wording of V.R.C.P. 52 and the policy behind it. I do not concur, however, in the Court's

conclusion that essential findings of the trial court are clearly erroneous or that the trial court misapplied our precedents in granting post-conviction relief. Once we accept a deferential standard of review in this case, the trial court's judgment must be affirmed.

The Court concludes that two findings of fact are clearly erroneous. The first of these forms no part of the Court's decision to reverse since its effect, according to the Court, was a possible misjudgment of credibility. The remedy for this error would be a new trial for a correct assessment of credibility. However, the Court has chosen to reverse without a remand, making credibility irrelevant.

Even if there is error in the finding, it is harmless. The juror clearly down-played her knowledge of Bailey. She stated, "I just see her and wave to her, and that's it." I agree with the trial court that the juror was not candid about her relationship with the witness.

The second finding—actually a group of findings—that the Court finds clearly erroneous goes to the heart of this case. The Court relies on part of Bailey's deposition testimony to the effect "I didn't say anything" to conclude that the court erred in finding that Bailey told the juror everything she had seen and heard the night of the attempted rape. Earlier in the deposition, Bailey testified that the juror approached her, told her that she heard a lot of screams and asked what happened. Bailey then told her "what I saw and that I heard a lot of loud screams and stuff," and told her "I saw everything." When asked whether it was fair to say that she told the juror "basically what [she] . . . told the jury or the court during the trial," she responded affirmatively.

There is a clear conflict in Bailey's testimony, and the Court has adopted one method of resolving the conflict. It is equally proper to resolve the conflict by crediting the detailed testimony earlier in the deposition and refusing to credit the generalization "I didn't say anything."[1] In any event, the resolution

---

[1] While it is not determinative under our standard of review, the way Bailey testified supports the trial court's method of reconciling her testimony. At trial, she testified as follows:

of the conflict was for the trial court, not for this Court. The findings involved here are directly supported by Bailey's earlier deposition testimony. We can not find them clearly erroneous.

The Court's importation of the "classic formulation" of the clearly erroneous test is an unfortunate red herring. While it may be mentioned in *In re Quechee Lakes Corp.*, 154 Vt. 543, 554 n.10, 580 A.2d 957, 963 n.10 (1990), it is not used in our cases. Rather, when we review a trial court's findings, we conduct the following inquiry:

> When reviewing the sufficiency of the evidence to support a trial court's findings, this Court must review the evidence in a light most favorable to the prevailing party and exclude the effect of any modifying evidence. When evidence conflicts, the credibility of witnesses, the weight and sufficiency of evidence, and its persuasive effect are matters accorded to the exclusive determination of the trier of fact. If the record contains any credible evidence that fairly and reasonably supports the findings, the trial court's ruling must stand even though inconsistencies or substantial evidence to the contrary may exist.

*Lawrence v. Pelletier*, 154 Vt. 29, 33, 572 A.2d 936, 939 (1990) (citations omitted). In addition, "where the evidence is in conflict, such findings will stand even if the evidence predominates against them; only where the contrary proof is so overwhelming that there is no reasonable basis upon which findings can stand will they be set aside." *Cliche v. Cliche*, 143 Vt. 301, 306, 466

---

Q. I believe you said [he was] pulling pants back up or pulling them back on?
A. Pulling up. He had them down to his ankles.
Q. You saw that?
A. Yes.
Q. Is there any doubt about that?
A. Yes.
Q. Is there any doubt in your mind that that happened?
A. I know he did it.

Her answer to the first question about her doubt appears confused and may be inconsistent with her answer to the second question about her doubt. As in the testimony in the deposition, her answer to the general question (here about her doubt) appears to undercut her specific statement about what she saw.

A.2d 314, 316 (1983). Nowhere does the Court explain that it has viewed the evidence in the light most favorable to petitioner, that the effect of modifying evidence has been excluded, that the persuasive effect of evidence is to be determined by the trial court, that the evidence it has disregarded was simply not credible, or that the evidence it finds persuasive is overwhelming. We would do better to admit that we do not give deference to trial judge fact-finding than to invoke one standard of review when we affirm and another when we reverse.

Once we properly accept the trial court's findings, we are left with the following conflicts between the juror's voir dire statements and the facts:

1. The juror stated during voir dire that she heard that the incident happened because "someone . . . mentioned it to me," but she didn't "hear of any particulars." When asked whether she was "told anything that supposedly factually occurred," she stated, "No." In fact, she was given a detailed account of the attempted rape by an eyewitness who testified at trial.

2. The juror stated at the voir dire that she knew of Bailey because their children played together and "I just see her and wave to her, and that's it." She failed to answer the trial judge's question inquiring whether she had learned anything about the case from a witness. In fact, it was Bailey who provided her the detailed information about the attempted rape, after the juror sought it out.

3. The juror indicated on voir dire that her knowledge of Bailey would not affect her ability to judge Bailey's credibility at trial. In fact, the juror had a fixed view of Bailey's credibility. She thought that Bailey "had a way of stretching things" and that she was a "gossip" and a "busybody."

If I apply these facts to the tests adopted by the Court as found in our case law, I think it clear that the judgment must be affirmed. These facts show the presence of circumstances capable of prejudicing the deliberative function of the jury. *State v. Onorato*, 142 Vt. 99, 106–07, 453 A.2d 393, 396 (1982). They further show that the juror failed to answer honestly a material question and that grounds exist to challenge the juror for cause. Although it is not clear that the Court would disagree with this conclusion if it accepted all the facts as found by the trial court, I want to emphasize some additional considerations not mentioned in the Court's opinion.

This is a post-conviction relief proceeding. The scope of review in such a proceeding is broad, "and its concerns include the exercise of discretionary powers by courts." *In re Provencher*, 127 Vt. 558, 560, 255 A.2d 180, 182 (1969). It is the functional equivalent of a consideration of a new trial motion where the time limit for such a motion has run before the new evidence justifying juror disqualification is available. See *State v. Sheppard*, 155 Vt. 73, 77, 582 A.2d 116, 118 (1990). The State has not challenged the new evidence as discovered in an untimely fashion. I believe we must accord the post-conviction court the same discretion in ruling on this petition as we would accord the district court if the issues had arisen in a new trial motion. See *State v. Dragon*, 135 Vt. 168, 170, 376 A.2d 12, 13 (1977). Thus, just as the district court does not have to accept a juror's claim of impartiality and can find bias despite such claims, the post-conviction court can find that claims of impartiality are insincere.

Here the court had no opportunity to explore whether the juror's knowledge and opinions prejudiced the deliberative functions of the jury. The juror's failure to disclose information at voir dire could not have been inadvertent and unknowing. Cf. *State v. Bevins*, 146 Vt. 129, 134, 498 A.2d 1035, 1038 (1985) (failure of juror to disclose acquaintance with co-perpetrator of the crime was inadvertent where juror had no memory of dealings with co-perpetrator some eight years earlier). Thus, in choosing to believe the witness rather than the juror, the court necessarily concluded that the juror was aware that she had not answered truthfully. A finding of lack of honesty in response to voir dire questions is itself an indication of lack of partiality. See *United States v. Perkins*, 748 F.2d 1519, 1532 (11th Cir. 1984).

It is also clear that the information disclosed at the post-conviction relief hearing would have been very relevant to a decision to challenge the juror, either for cause or peremptorily. Other courts have been sensitive to the effect on the trial process of a defendant's inability to exercise challenges because of prospective jurors' failure to disclose critical information. See, e.g., *Ex parte O'Leary*, 417 So. 2d 232, 240 (Ala. 1982) (parties have a right to have questions answered truthfully to enable them to exercise their challenges wisely), *cert. denied*, 463 U.S. 1206 (1983). I concur in the recent observation of the Georgia

Court of Appeals in *Martin v. State*, 168 Ga. App. 623, 625, 309 S.E.2d 899, 901 (1983):

> The state seeks this court to find harmless error in the juror's false silence . . . . We cannot view the error so lightly. While we agree that if one ignores the valuable right of voir dire to effect the selection of an impartial jury, the developed facts show that the juror probably was ultimately fair in her decisions. However, we express more dedication to the concept of a trial by peers and of a defendant's right to have jurors selected after exposure and explanation of all apparent defects developed by voir dire. Were we to accept the position advanced by the state, we would for all intents and purposes emasculate the concept of voir dire. The trial court or this court could determine the propriety or acceptability of a juror by weighing the possible prejudice inherent in a juror's defect. This would thus deprive the counsel of the right fully to explore a defect, waive it, challenge the juror for cause, or simply peremptorily challenge the suspect juror.

The observation is particularly relevant where the facts as found below indicate that the defendant had grounds to challenge the juror for cause. See *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *Perkins*, 748 F.2d at 1532–33.

The Court has two additional responses to the trial court's conclusion in this case: (a) the juror's testimony showed that she found Bailey not to be credible, and since Bailey was a prosecution witness, any error is harmless; (b) any failure to evaluate properly the juror's ability to serve fairly and impartially was caused by defense counsel's failure to ask the proper questions during voir dire.

The first ground might be more plausible if, as suggested by the Court, all of Bailey's statements supported the State, and the juror always discounted Bailey's statements. The juror's deposition statement was, however, that Bailey told her "somebody tried to get raped last night." The phrasing of the statement suggests that Bailey believed that the victim was partially responsible for the attempted rape. Thus, Bailey's statements were not entirely pro-State, and we do not know what portion of the statements the juror might have disbelieved pursuant to

her view of Bailey's credibility.[2] It is possible that the juror's opinion of the witness helped the State.

Even if the juror's expressed view of Bailey's character and credibility helped only the defense, I do not think it warrants reversal of the trial court's decision. The juror sought out Bailey's observations, apparently considering them credible at the time. More importantly, the real basis for the court's decision was the juror's discussions with the witness and her failure to disclose them during voir dire. The credibility assessment, while relevant, is not determinative.

The second ground is the failure of the defense counsel to question the juror more fully. Certainly, 20/20 hindsight shows that a more complete interrogation was needed. For two reasons, I do not believe the failure to inquire more fully warrants reversal. First, the critical information warranting disqualification of the juror came from Bailey, not the juror. In essence, the trial court found that the juror failed to tell the truth when asked about her knowledge of the incident. No amount of questioning of the juror alone would have shown the true facts.

Second, the juror's answers clearly stated that further inquiry would be unavailing. All potential jurors were asked by the trial judge whether they had "heard anything about the case?" and whether they "heard any of the witnesses say anything about it?" The juror answered that she had heard that the incident happened, without any particulars, from "someone . . . on the street." In view of the direct question about witnesses, one could conclude only that the "someone" was not a witness. At best, the response was misleading, and defense counsel can not be faulted for failing to follow up.

I would affirm.

## On Motion for Reargument

Appellee's motion to reargue asserts that this Court applied an improper clearly erroneous standard to key trial court findings. The test used was that articulated in *United States v.*

---

[2] As with Bailey's own testimony, the majority acknowledges a conflict in the juror's characterization of Bailey's statements, yet chooses to believe a later rendition. I do not believe that the point here is undercut by the Court's appellate fact-finding.

*United States Gypsum Co.*, 333 U.S. at 395, that a judicial find-ing is clearly erroneous when *"although there is evidence to support it,* the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Emphasis added.) Appellee contends that *Gypsum* is not and never has been the law of this state. Specifically, he points to several of our cases requiring that the reviewing court look at the evidence in the light most favorable to the prevailing party, excluding the effect of modifying evidence, see, e.g., *Highgate Assocs. v. Merryfield,* 157 Vt. 313, 315, 597 A.2d 1280, 1281 (1991); *Semprebon v. Semprebon,* 157 Vt. 209, 214, 596 A.2d 361, 363 (1991), and asserts he should have re-ceived the benefit of this rule.

This Court previously addressed this issue in *Seaway Shop-ping Center Corp. v. Grand Union Stores, Inc.*, 132 Vt. 111, 315 A.2d 483 (1974). While holding that the adoption of V.R.C.P. 52(a) had not changed Vermont's clearly erroneous standard, *id.* at 116, 315 A.2d at 486–87, the Court maintained that, under the pre-Rule 52 standard, a reviewing court was required to consider the evidence " 'as a whole,' " just as *Gypsum* requires the court to look at the "entire evidence," and consequently found "very little difference in result between the Federal rule and our case law as applied to our Vermont rule." *Id.* at 117, 315 A.2d at 487 (quoting *Little v. Little,* 124 Vt. 178, 182, 200 A.2d 276, 279 (1964)).

Recent United States Supreme Court cases attest to the con-tinued vitality of the *Gypsum* test and affirm its compatibility* with the deferential clearly erroneous standard. See *Anderson v. Bessemer City,* 470 U.S. at 573–74 ("If the [trial] court's ac-count of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."); *Amadeo v. Zant,* 486 U.S. 214, 223 (1988) (following *Anderson*). Rather, a finding supported by evidence is clearly erroneous only if the trial court misapprehends key evidence in a way that renders its finding implausible.

---

* Contrary to the dissent's insistence that we view *Gypsum* and Rule 52(a) as "the same tests," we stress their compatibility.

With regard to two key trial court findings in this case, the Court held that (1) the "transcript does not corroborate the court's finding" on whether the juror ever stated that she did not know the witness, i.e., there was no competent, reasonable evidence to support this finding, and (2) the trial court "ignored or overlooked" evidence that the juror and witness had not discussed the details of the case, i.e., there were not two plausible explanations both supported by the evidence between which the trial court was entitled to choose. Rather, the trial court simply misapprehended the key evidence—its explanation was not plausible. Both are correct applications of our clearly erroneous standard.

Appellee's remaining arguments are without merit.

*Motion for reargument denied.*

**Dooley, J.,** dissenting. My dissent to the Court's opinion expresses my view that the *United States Gypsum Co.* test is inconsistent with our standard for appellate review of fact-finding. Ordinarily, I would accept that the issue has been fully aired, even though my view did not prevail, and vote to deny reargument. In this case, I would grant reargument, however, because our explanations for basic inconsistencies in our position are only making the matter worse.

While I think the Court was in error, I accept that it adopted the *Gypsum* test for evaluating findings of fact. What I cannot accept is that there was no change in our law. No person who put the *Gypsum* test next to the tests we have adopted to determine whether facts found by the trial court are clearly erroneous could seriously claim that these are the same tests. While *Seaway Shopping Center Corp. v. Grand Union Stores, Inc.*, 132 Vt. 111, 315 A.2d 483 (1974), narrowed the differences between our test and the *Gypsum* test, it does not say they are the same test. In fact, the issue in *Seaway Shopping Center Corp.* was whether we would adopt the *Gypsum* test as appellants urged. We declined to do so, stating, "We are not inclined to give a different meaning to V.R.C.P. 52(a) than has been previously enunciated by this Court in our case law." *Id.* at 117, 315 A.2d at 487. We would not have said that if we thought the tests were the same.

Ironically, we recently addressed this precise question in *In re Town of Sherburne*, 154 Vt. 596, 581 A.2d 274 (1990). We said:

*Quechee Lakes* contrasted the "substantial evidence" standard of review with what is called (following Professor Koch) the "classic formulation" of the "clearly erroneous" test, as set forth in *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948): "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." The *Gypsum* formulation differs, however, from the "clearly erroneous" test under V.R.C.P. 52(a) as typically defined in our decisions. . . . It also differs from the formulation used since by the United States Supreme Court . . . .

*Id.* at 606 n.9, 581 A.2d at 279 n.9 (citations omitted). The ink is barely dry on that explanation, and we are today stating the opposite without admitting the conflict. We have now spoken so inconsistently on the standard of review for fact-finding that we should grant reargument and face openly whether we should change that standard as the majority opinion in this case clearly did.