*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-298

FEBRUARY TERM, 2014

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Orange Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Perry C. Lowell | } | DOCKET NO. 243-6-12 Oecr |

Trial Judge: Timothy B. Tomasi

In the above-entitled cause, the Clerk will enter:

Defendant appeals his petit larceny conviction, arguing that the trial court erred in denying his motion to suppress based on its conclusions that the photo lineup from which the State's witness identified him was not unduly suggestive and that her identification of him was reliable. We affirm.

On May 25, 2012, the daughter of the complainant observed from her bedroom window a man loading the family's lawn tractor into a pickup truck. Believing that the man was stealing the tractor, she went outside to confront him. Following a brief verbal exchange, the man drove away with the tractor in the truck. The daughter immediately contacted the state police and provided a physical description of the man. Four days later, at the request of the police, the witness arrived at the state police barracks to provide a written statement. When she arrived, a state trooper informed her that the police had arrested a suspect with a lengthy criminal history and that he had the suspect's criminal history with him in the interview room. At some point, the trooper left the room, and the witness took the opportunity to look at the top page of the documents concerning defendant. When the trooper returned to the room, the witness provided a statement, but the trooper told her that the photo array was not ready. The photo lineup was conducted on June 5, 2012. The names of the men whose photographs were in the lineup were not disclosed. The witness immediately identified defendant in the lineup as the man who had stolen the lawn tractor.

Defendant filed a pre-trial motion to suppress the photo lineup, arguing that the array of photographs was unduly suggestive in that defendant's head appears larger in his photograph than the heads in the other photographs, and that the June 5 lineup was tainted by comments made by the trooper at the May 29 interview. On January 1, 2013, the trial court rejected defendant's argument that the array was unduly suggestive because of the closer view of defendant's head relative to the others in the lineup, but concluded that an evidentiary hearing was necessary to determine whether the photo lineup may have been tainted by police actions during the May 29 interview.

A hearing was held on February 6, 2013. The State presented two witnesses, the interviewing state trooper and the witness to the crime. Based on their testimony and other evidence, including a video recording of the May 29 interview, the trial court denied the motion to suppress. The court found credible the witness's assertion that her identification of defendant was based solely on observations she made on the day of the crime—seeing defendant from her bedroom window from thirty feet for approximately thirty seconds to a minute and speaking to him for ten-to-fifteen seconds from a distance of approximately five feet—and not on any information gleaned from the state trooper or his documents at the May 29 interview. The court also credited the witness's testimony, which was supported by the video recording, that she did not see a photograph of defendant at the May 29 interview. The court criticized the state's practice of discussing the physical description of a suspect with a witness before providing a photo lineup for identification of the suspect, but noted that in this case, the description concerned only the suspect's size and physical build, which were not displayed in the photo lineup. After the court denied defendant's motion to suppress, defendant entered a conditional guilty plea.

On appeal, defendant argues that the trial court erred in concluding that the photo lineup was not tainted by the prominence of his head in his photograph and by the actions of the state trooper at the May 29 interview a week before the photo lineup was conducted, including discussing the physical description of the suspect in custody and leaving documents identifying defendant in a place that allowed the witness to see them.

On appeal from a motion to suppress, this Court upholds the trial court's factual findings unless there is no reasonable or credible evidence to support them, but reviews the court's legal conclusions de novo. State v. Mayo, 2008 VT 2, ¶ 12, 183 Vt. 113. Determining the weight of evidence and its persuasive effect, and the credibility of witnesses, are within the exclusive purview of the trial court, and thus the court's ruling will be affirmed if supported by law, even if there are inconsistencies with respect to the evidence. Id. ¶ 14. "We apply a two-part inquiry to determine the admissibility of pretrial identifications, first asking if the identification was unnecessarily suggestive, and, if so, then assessing its reliability."* Id. ¶ 16. "Even if the lineup is found to be unnecessarily suggestive, it may still be admissible if it bears sufficient indicia of reliability." Id. "Before defendant's conviction can be reversed on grounds of an invalid pretrial identification procedure, the procedure must be shown to have been so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." State v. Emerson, 149 Vt. 171, 174 (1987) (quotations omitted); accord State v. Findlay, 171 Vt. 594, 597 (2000) (mem.). In determining whether a lineup was unduly suggestive, we examine "how the lineup was set up, how many photos were arrayed, whether the photos were similar in size, color, or description, and the officer's administration of the lineup." Mayo, 2008 VT 2, ¶ 17. Factors to assess reliability, which is "the linchpin in determining the admissibility of identification testimony," State v. Kasper, 137 Vt. 184, 192 (1979) (quotation omitted), include "the opportunity of the witness to observe the criminal at the time of the crime, the witness' degree of attention, the accuracy of the description [the witness] is able to give police, the level

---

* As the trial court pointed out, we have not decided which side bears the burden of proof on the questions of suggestiveness and reliability, cf. United States v. Beverly, 369 F.3d 516, 538 (6th Cir. 2004) (adopting shifting burden where defendant bears burden of showing unnecessary suggestiveness and prosecution bears burden of showing reliability); however, we agree with the trial court that defendant cannot prevail regardless of which side bears the burden of proof.

of certainty accompanying the description, and the time lapse between the crime and when the description is first given." Mayo, ¶ 20 (quotation omitted).

Here, defendant first points to the fact that defendant's head in his photograph is larger and more prominent than the heads in the other photographs. He contends that the prominence of his head in comparison to the others was unduly suggestive to the witness. The trial court rejected this argument, noting that the photo lineup displayed multiple, similarly sized photographs of similar-looking men. We agree that the larger close-up of defendant's head is not, in and of itself, unduly suggestive so as to require reversal in this case. Cf. State v. Leavitt, 133 Vt. 35, 38-39 (1974) (concluding that providing photo lineup in which only defendant's photograph revealed smile with distinctive separated teeth as reported by complainant was not so impermissibly suggestive as to give rise to substantial likelihood of misidentification, considering that photos of smiling suspects were rare and that defendant had opportunity at trial to highlight discrepancy for trier of fact). The trial court also determined that the witness' identification of defendant was reliable in that she had a good look at the man who took the tractor on the day of the crime when she confronted him from just a few feet away, and that her description of the man was consistent throughout the investigation. Again, the record supports the court's reasoning.

Defendant argues, however, that the reliability of her identification was compromised by: (1) the actions of the state trooper in telling the witness a week before the photo lineup was conducted that they had arrested a suspect with a lengthy criminal record and that they were confident they had the right guy; (2) the state trooper providing the witness with a physical description of the suspect; (3) the state trooper leaving documents in a place that the witness could have discovered, at minimum, defendant's name, with which she could have obtained a photograph of defendant before participating in the photo lineup a week later; and (4) while conducting the photo lineup, the state trooper asking the witness to pick the perpetrator among the photographs presented to her, thereby suggesting that the perpetrator's photograph was definitely among the six presented. We find these arguments unavailing. As the trial court noted, the physical description that the trooper provided to the witness did not include a description of the suspect's face, which was all that was revealed in the photo lineup, and the witness did not see a photograph of defendant at the May 29 interview. Defendant's contention that she may have discovered his name and, with that, his photograph in the intervening week between the interview and the photo lineup cannot overcome the trial court's conclusion that the witness credibly testified that she had a good look at the perpetrator on the day of the crime and based her identification at the photo lineup solely on her observation of him that day.

Affirmed.

3

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Geoffrey W. Crawford, Associate Justice

4