**Reginald I. YOUNG, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 94–CF–1568.

District of Columbia Court of Appeals.

Argued Jan. 21, 1997.

Decided May 22, 1997.

Andrew Grosso, Washington, DC, appointed by the court, for appellant.

Catherine Sheehan, Assistant United States Attorney, for appellee. Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman, Michael F. Tubach, Nancy R. Page and Ricardo J. Nunez, Assistant United States Attorneys, were on the brief for appellee.

Before STEADMAN, SCHWELB and KING, Associate Judges.

STEADMAN, Associate Judge:

Appellant Reginald Young contends that his Sixth Amendment right to an impartial jury was violated when a jury member failed to disclose that he was a convicted felon on life parole and that the prosecutor in Young's case was also prosecuting the juror's son in another case. After a post-trial hearing, the trial court found no actual juror bias. We see no basis to fault this determinative ruling and accordingly affirm.[1]

---

1. Young also argues that the trial court erred in admitting a photocopy of a list of the serial numbers of bills used in the buy-bust operation that lead to his convictions. After Young's initial objection at trial on best evidence grounds, the trial court ordered the prosecutor to search for the original list. The prosecutor searched the case jacket but could not locate the original. On cross-examination the officer who created the list indicated that he did not know where the original was. The prosecutor also asked the other officers involved in the case if they knew where

## I.

On May 10, 1994, a jury found Young guilty of distribution and possession with intent to distribute cocaine. The jury also found Young's codefendant, Shandra Smith, guilty of distribution of cocaine. Approximately one month later, on June 8, 1994, the Assistant United States Attorney who prosecuted Young's case, Michael Tubach, had a chance encounter with a juror from Young's trial. The juror was in the hallway outside the courtroom where Young's trial had taken place standing beside a defense attorney representing a defendant in another case which Tubach was prosecuting. The defense attorney introduced the juror as the father of the defendant, and Tubach asked if they had met previously. The juror replied that he had been a juror in one of Tubach's recent cases. Tubach asked if it was Young's case and the juror responded affirmatively. Tubach then told the juror that Young had admitted his culpability to the presentence report writer, and the two parted company.

The next day, Tubach sent a letter to Young and Smith's counsel informing them that "I learned yesterday that one of the jurors [in the *Young/Smith* case] is a close relative of a defendant I am currently prosecuting. Because the case involving the juror's relative was pending during the *Young/Smith* trial, I feel obliged to disclose this fact to you for whatever action you deem appropriate." In response both Young and Smith

filed motions for new trial pursuant to Super.Ct.Crim.R. 33.

Subsequently, the parties discovered that the juror was a convicted felon then on parole for life.[2] The parties also discovered that the juror had responded incorrectly to two questions on the juror qualification form. Specifically, the juror was asked:

> 8a. Have you ever been convicted of a felony?
>
> 8b. If your answer to 8a was yes, has it been ten (10) years since the completion of your jail/prison term or parole, or probation?

The juror's handwritten form indicates an answer of "no" to question 8a and an answer of "yes" to question 8b. The trial court's computer printout, however, indicated answers of "yes" to both questions.

The trial court held a hearing on August 3, 1994 where the juror testified. The juror confirmed that he had been convicted of armed robbery in 1980, and indicated that he had received a sentence of ten years to life.[3] He had been paroled in 1988, and remained on parole at the time of the hearing. According to the juror, he had incorrectly answered question 8a on the juror qualification form because he "probably filled this form out in haste." He explained that he had answered question 8b incorrectly because "[t]he way I understood the question at that

---

the original was. They indicated that if it was not in the case jacket they did not know where it might be.

"The best evidence rule requires that when the contents of a writing are to be proved the original writing must be produced unless its absence is satisfactorily explained." *Walker v. United States,* 402 A.2d 813, 813–14 (D.C.1979) (per curiam). "Secondary evidence of the contents of writing is admissible on proof that the original is lost." *Id.* at 814. "A reasonable discretion is vested in the trial court in the application of the best evidence rule." *Id.* Since there was sufficient proof of a reasonable search for the original, we conclude that the trial did not abuse its discretion in admitting the photocopy. *See id.*

2. The juror's judgment and commitment order reveals that in 1980 he was convicted of burglary while armed, two counts of armed robbery and assault with intent to commit robbery while armed. On April 22, 1980 the juror was sen-

tenced to concurrent sentences of twelve years to life on each count. D.C.Code § 24–204(a) (1996) provides that "[w]hile on parole, a prisoner shall remain in the legal custody and under the control of the Attorney General of the United States or his authorized representative until the expiration of the maximum of the term or terms specified in his sentence without regard to good time allowance." Thus, because the juror's maximum sentence was life, under § 24–204(a) he will remain on parole for life. However, under D.C.Code § 24–204(b) (1996) the Board of Parole "in its discretion, may release a parolee or mandatory releasee from further supervision prior to the expiration of the maximum term or terms for which he or she was sentenced." 28 DCMR § 214.1 (1987). The record does not reveal whether the juror has been released from supervision by the Board.

3. The juror's judgment and commitment order indicates that the sentence was actually twelve years to life. *See* note 2 *supra.*

particular time was was my conviction ten years old." He also explained that when he checked in for jury service, a clerk at the juror's desk asked him about the discrepancy between questions 8a and 8b. Specifically he recalled the clerk asking "have you been convicted of a felony?" to which he replied "yes," and "has it been ten years since your conviction?" to which he also replied "yes." The clerk then typed something into the computer.

The juror also testified that during voir dire he did not hear the court's question to potential jurors as to whether they had any family members that had been charged with a criminal offense although he was "reasonably paying attention" during the questioning. He also indicated that at the time of Young's trial he did not know who was prosecuting his son's case, and did not learn it was Tubach until after Young's trial had concluded. Finally he testified that neither his son's pending case nor his prior conviction influenced the way he decided the facts of Young's case.

Following additional briefing by the parties, the trial court held a hearing on September 26, 1994 where he heard argument and made findings of fact. The trial court found the juror "very credible." Specifically, the trial court indicated:

> I credit that any mistakes he made on the form were inadvertent and that's certainly bolstered by the fact of—not only his testimony, but the fact that he did answer to that question about ten years, indicating that he wasn't trying to hide anything. He just wasn't attentive when he filled out the form. And then there is no reason not to credit him when he said he answered the way he did when he came to the jury office.

In terms of not answering in the courtroom and he failed to answer, he didn't fail to answer the *Ridley* question[4] involving himself. He failed to answer the question involving his son because of the way the question was worded wouldn't have covered himself. It would have covered his son's pending case. And I credit that he was not being attentive. Unfortunately, I feel that does happen on occasion. But, I have no reason to believe he was hiding that for any reason ... so there is no bias reflected by any failure to disclose. It wasn't deliberate.

The trial court also found that

> the juror had absolutely no knowledge of Mr. Tubach's connection to his son's case, and therefore nothing regarding Mr. Tubach. The evidence is unequivocal and clear on that point. Nothing regarding Mr. Tubach specifically could have affected anything that he did.

The trial court then indicated that Young was required to show actual prejudice in order to merit a new trial and concluded

> [l]ooking at actual prejudice, the Court would find that there was none. Both because the failure to disclose was inadvertent, not deliberate, and because there was nothing about the two factors that were not properly disclosed that would have in any way prejudiced the juror.

> . . . .

> And there is no evidence whatsoever that this juror had any actual bias against the defendants or in favor of the government.

Accordingly, the trial court denied the motions for new trial. Young appealed.[5]

## II.

■ Young argues that the juror's failure to disclose his conviction, parole status

---

4. *See United States v. Ridley*, 134 U.S.App.D.C. 79, 81, 412 F.2d 1126, 1128 (1969); *Tate v. United States*, 610 A.2d 237, 238 n. 1 (D.C.1992) ("A question directed to potential jurors inquiring whether they or persons close to them have been accused of, the victim of, or a witness to a crime is sometimes called a *"Ridley* question." ").

5. Smith also appealed and the two cases were consolidated. However, because the issues pre-

sented in each appeal are independent of the other, we have *sua sponte* severed the cases and today decide Smith's case in a separate unpublished Memorandum Opinion and Judgment rejecting her claim of a violation of her right to a speedy trial. At the time of oral argument on appeal, Smith had completed her probationary sentence and, unlike Young, had no interest in obtaining a new trial.

and son's pending case violated Young's Sixth Amendment right to trial by an impartial jury. "The right to trial by an impartial judge or jury is fundamental and deeply embedded in American jurisprudence." *Hughes v. United States,* 689 A.2d 1206, 1207 (D.C.1997). "[T]he remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips,* 455 U.S. 209, 215, 102 S.Ct. 940, 945, 71 L.Ed.2d 78 (1982); *Hill v. United States,* 622 A.2d 680, 684 (D.C.1993); *Harris v. United States,* 606 A.2d 763, 765 (D.C.1992). At the hearing "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984); *Harris, supra,* 606 A.2d at 766 n. 5. In other words, as interpreted both by this court and the D.C. Circuit, "the relevant issue is whether the juror was actually biased against the defendant." *Harris, supra,* 606 A.2d at 766 n. 5; *United States v. Williams-Davis,* 319 U.S.App.D.C. 267, 280, 90 F.3d 490, 503 (1996). The seating of an actually biased juror is a structural error not subject to the harmless error rule. *Hughes, supra,* 689 A.2d at 1210. "[F]ollowing a proper hearing, the determination of juror bias or prejudice lies particularly within the discretion of the trial court, reversible only for a clear abuse of discretion, and the findings of fact underlying that determination are entitled to great deference." *Hill, supra,* 622 A.2d at 683–84; *Leeper v. United States,* 579 A.2d 695, 698 (D.C.1990). "Our review is deferential because the question of prejudice turns substantially on the judge's appraisal of the juror's demeanor, and is therefore one about which the trial judge is especially qualified to render a sound opinion." *Hill, supra,* 622 A.2d at 684; *Leeper, supra,* 579 A.2d at 698.

Here, the juror's failure to disclose his conviction, parole status and son's pending case may indicate that he was actually biased against Young in two ways. First, the juror's failure to disclose this information, particularly if deliberate, may indicate a desire to serve on Young's jury for some improper purpose. Second, the information the juror failed to disclose may indicate some bias against Young.

As for the failure to disclose, we note at the outset that the trial court found that the juror's failure to disclose his prior conviction, parole status and son's pending charge were the result of inattentiveness. The trial court concluded that the juror's failure to disclose this information was not deliberate and therefore did not reveal any bias against Young. The record supports this determination.

■ As for the nature of the undisclosed information, Young initially argues that we should infer as a matter of law that the juror was biased because as a convicted felon he was legally ineligible to sit on the jury. The relevant section of the D.C.Code provides that "[a]n individual shall not be qualified to serve as a juror"

> if that individual has been convicted of a felony or has a pending felony or misdemeanor charge, except that an individual disqualified for jury service by reason of a felony conviction may qualify for jury service not less than one year after the completion of the term of incarceration, probation, or parole following appropriate certification under procedures set out in the jury system plan.

D.C.Code § 11–1906(b)(2)(B) (1995). Here the juror was plainly disqualified because he had been convicted of a felony and had not completed his term of parole at the time of trial. Young urges that because the juror was statutorily prohibited from serving on his jury, we should presume he was biased and that Young was prejudiced *per se* as a result.

■ We have not previously considered whether the felon status of a juror taken alone implies bias. However, the United States Court of Appeals for the District of Columbia Circuit within the past few years considered this very issue in *United States v. Boney,* 298 U.S.App.D.C. 149, 977 F.2d 624 (1992). In *Boney,* the appellants discovered after trial but before sentencing that the jury foreman was a convicted felon. *Id.* at 153,

977 F.2d at 628. They moved for a new trial and the trial court denied their motion without a hearing. *Id.* On appeal they argued that because the juror was statutorily ineligible to serve, his presence on the jury was *per se* reversible error. *Id.* at 158, 977 F.2d at 633. The D.C. Circuit rejected the argument holding that

> [t]he Sixth Amendment right to an impartial jury ... does not require an *absolute bar* on felon-jurors. The Supreme Court has stressed repeatedly that the touchstone of the guarantee of an impartial jury is protection against juror bias. *See, e.g.,* [*McDonough, supra,* 464 U.S. at 554, 104 S.Ct. at 849]. A *per se* rule would be appropriate, therefore, only if one could reasonably conclude that felons are always biased against one party or another. But felon status, alone, does not necessarily imply bias. In fact, as the dissent suggests, Congress' purpose in restricting felons' jury service may stem from considerations other than a concern for biased jurors. More important, a *per se* rule requiring a new trial whenever it turns out that a felon served on the jury seems inconsistent with *McDonough*'s hostility to unnecessary new trials, *id.* at 553–54, 104 S.Ct. at 848–49, and the oft repeated maxim that "a defendant is entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). We think, therefore, that the Sixth Amendment guarantee of an impartial trial does not mandate a *per se* invalidation of every conviction reached by a jury that included a felon.

*Id.* (footnote and citation omitted). Instead the court remanded the case for a hearing where the appellants had an opportunity to prove that the juror's failure to disclose his felon status revealed actual bias. *Id.* at 159–60, 977 F.2d at 634–35. *See also Williams–Davis, supra,* 319 U.S.App.D.C. at 280, 90 F.3d at 503 (requiring defendant to prove actual bias); *United States v. Brown,* 307 U.S.App.D.C. 60, 63, 26 F.3d 1124, 1127 (1994) (same); *United States v. North,* 285 U.S.App.D.C. 343, 404, 910 F.2d 843, 903 (1990) (same).

Although our juror qualification statute is not identical to the federal act at issue in *Boney,* we are persuaded by the reasoning of the D.C. Circuit. We agree that it is not reasonable to conclude that convicted felons are always biased for the government and against criminal defendants: indeed the opposite seems more intuitive. Moreover, as illustrated by the majority's above quoted reference to Judge Randolph in dissent, it appears that the historical reasons for keeping felons out of the jury pool have had more to do with notions of punishment or civic service than perceived bias. *See Boney, supra,* 298 U.S.App.D.C. at 162–63, 977 F.2d at 637–38 (Randolph, J., dissenting). Thus, we hold that the fact that the juror was statutorily ineligible to serve due to a felony conviction does not constitute prejudice *per se* meriting automatic reversal.

Even conceding the rationale of *Boney,* Young argues that here the felon status of the jury does not stand alone but is coupled with the fact that the juror was on life parole at the time of trial. Young argues that his situation is more akin to *Remmer v. United States,* 350 U.S. 377, 76 S.Ct. 425, 100 L.Ed. 435 (1956) than *Boney.* In *Remmer,* the defendant, Elmer "Bones" Remmer, an "operat[or] of gambling houses in Nevada," was tried for federal tax evasion. *Id.* at 377, 380, 76 S.Ct. at 426, 427. During the trial a juror, Smith, an insurance broker by trade, was approached by one Satterly, an individual who "had been employed in a gambling house in Nevada as a dealer of craps," ostensibly to purchase an insurance policy. *Id.* at 380, 76 S.Ct. at 427. During their negotiations Satterly made a remark which Smith interpreted as a bribe offered to acquit Remmer at trial. *Id.* Disturbed, Smith informed the judge. *Id.* The judge told Smith not to worry, but referred the matter to the district attorney who referred the matter to the F.B.I. *Id.* Shortly thereafter, during a recess in the trial, an F.B.I. agent interviewed Smith at his place of business about the Satterly matter. *Id.* at 380–81, 76 S.Ct. at 427. After the jury convicted Remmer on four counts of tax evasion, Smith remarked to a fellow jury that he had been "under terrific pressure" at the trial. *Id.* at 377, 381, 76 S.Ct. at 426, 427. Remmer was

unaware of these events until he read about them in the newspaper after the verdict. *Id.* at 378, 76 S.Ct. at 426. No criminal charges were ever filed in connection with the incident. *Id.* at 381, 76 S.Ct. at 427.

The trial court held a hearing on the matter and found that "the incident complained of was entirely harmless so far as the petitioner was concerned and did not have the slightest bearing upon the integrity of the verdict nor the state of mind of [Smith]." *Id.* at 379, 76 S.Ct. at 426. The Supreme Court disagreed and reversed holding that

> [w]e think this evidence, covering the total picture, reveals such a state of facts that neither Mr. Smith nor anyone else could say that he was not affected in his freedom of action as a juror. From Smith's testimony it is quite evident that he was a disturbed and troubled man from the date of the Satterly contact until after the trial. Proper concern for protecting and preserving the integrity of our jury system dictates against our speculating that the F.B.I. agent's interview with Smith, whatever the Government may have understood its purpose to be, dispersed the cloud created by Satterly's communication. As he sat on the jury for the remainder of the long trial and as he cast his ballot, Smith was never aware of the Government's interpretation of the events to which he, however unwillingly, had become a party. He had been subjected to extraneous influences to which no juror should be subjected, for it is the law's objective to guard jealously the sanctity of the jury's right to operate as freely as possible from outside unauthorized intrusions purposefully made.

*Id.* at 381–82, 76 S.Ct. at 427–28.

Young contends that the juror in his case was in a position similar to Smith in that his actions were subject to the oversight of government authorities. We think the situation in *Remmer* is entirely distinguishable from the one before us. As an initial matter, it appears that the Supreme Court's concern in *Remmer* was not so much that an F.B.I. agent had communicated with Smith during the trial, but that Smith might have perceived from this communication that the

F.B.I. suspected him of wrongdoing. Such a perception would, of course, give Smith a strong incentive to vote to convict to dissipate any suspicion by the F.B.I. that he had been bribed. No such scenario exists in our case. Additionally, unlike *Remmer* there is nothing in the record here to suggest that the juror's parole officer or any other government agent contacted the juror during the trial, or that any such agent would have any interest whatsoever in the juror's jury service. Young suggests that we remand the case so that he may further explore this point, but as he has already had one hearing on the issue we think it inappropriate to give him a second bite at the apple. Moreover, despite Young's efforts to distinguish *Boney* as a case involving a felon conviction "standing alone," a close reading of *Boney* indicates that its facts are almost identical to those before us, for in *Boney* the juror in question was not only a felon, but a felon on probation at the time of trial. *See Boney, supra,* 298 U.S.App.D.C. at 168 n. 6, 977 F.2d at 643 n. 6 (Randolph, J., dissenting).

▪ Finally, Young argues that the juror was biased against him because the juror had an incentive to curry favor with the prosecutor who was prosecuting the juror's son in another case. We have previously held that a juror's failure to answer a *Ridley* question [6] about a relative's criminal record alone does not merit a mistrial. *Harris, supra,* 606 A.2d at 765–67. Additionally, in *Smith v. Phillips, supra,* the Supreme Court held that when a juror applied for a job with the prosecutor's office during trial, reversal was only appropriate upon a showing of actual bias. 455 U.S. at 215–18, 102 S.Ct. at 944–47. While we recognize that the potential for actual bias exists when a juror's family member has a pending case, here the trial court found that the juror did not know that the Assistant United States Attorney in Young's case was also assigned to his son's case until after the conclusion of Young's trial. In the absence of knowledge on the juror's part that the prosecutor in Young's case was also prosecuting his son, we cannot say that the juror

---

6. *See* note 4 *supra.*

must be viewed as biased against Young on that ground.

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in denying a new trial on Young's claim that his Sixth Amendment right to an impartial jury had been infringed.[7]

*Affirmed.*

---

7. Young also contends that the juror's failure to disclose his conviction, parole status and son's pending charge denied Young the effective use of his right of peremptory challenge and entitles Young to automatic reversal. Young's argument is foreclosed by our recent decision in *Lyons v. United States*, 683 A.2d 1066 (D.C.1996) (en banc). In *Lyons*, we specifically rejected the contention pressed here that interference with peremptory challenges is a *per se* reversible "structural defect" rather than a mere "trial error." *Id.* at 1070–71. Moreover, we recognized in *Lyons* that "the possible deprivation of the exercise of a peremptory challenge does not mandate reversal because the relevant inquiry is whether the juror was actually biased against the defendant." *Id.* at 1071 (quoting *Harris, supra,* 606 A.2d at 766 n. 5). The trial court's ruling on the absence of bias or prejudice is equally determinative of Young's peremptory challenge claim.