# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1122

_____

United States of America,         *
                                   *

         Appellee,         *

                                   *   Appeal from the United States
     v.                        *   District Court for the Eastern
                                   *   District of Arkansas.

Darryl Keith Foster,         *

                                   *

         Appellant.       *

_____

Submitted:  September 22, 2010
Filed:  October 20, 2010

_____

Before SHEPHERD, BRIGHT, and ARNOLD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After his conviction by a jury for possessing child pornography, *see* 18 U.S.C. § 2252(a)(4)(B), Darryl Foster filed a motion for a new trial under Fed. R. Crim. P. 33 asserting that his trial counsel was ineffective. When the district court[1] denied the motion, Mr. Foster appealed, maintaining that the district court erred in admitting certain evidence at trial and in denying his post-trial motion. We affirm.

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

I.

In his motion for a new trial, Mr. Foster describes much of the evidence introduced against him as "character assassination" and thus inadmissible under Fed. R. Evid. 404. There was indeed a considerable amount of testimony on direct examination in the government's case-in-chief that Mr. Foster abused his wife physically and sexually and that she exhibited all the characteristics of a battered woman. For instance, Mr. Foster's wife, Stephanie Foster, testified that he once picked her up and threw her out of the house and that he videotaped sexually abusive encounters with her; she also said that he kicked her and choked her and sometimes had sex with her when she was asleep. In addition, law enforcement officers and others offered testimony that in their opinion Ms. Foster had exhibited all the signs that they had been trained to recognize as typical of a victim of domestic violence.

All of this evidence initially seems irrelevant to the charge that Mr. Foster possessed child pornography and unfairly prejudicial to him, designed to show that he was a person of bad character, but the government maintains that it was in fact admissible for two reasons. First, the government asserts, it was admissible to show why Ms. Foster testified in pretrial proceedings that her previous statement that her husband possessed child pornography was coerced by the police officers who came to the Fosters' house to investigate a domestic disturbance. At trial, Ms. Foster testified that her husband had indeed possessed child pornography, and her explanation for her inconsistent pretrial testimony was that she was afraid of Mr. Foster and that he controlled her; so the abuse that she says she suffered explains why she changed her story and served to rehabilitate her as a witness. Second, the government says, the evidence was offered to rebut Mr. Foster's anticipated defense that Ms. Foster controlled their relationship, including all of their computers; that she downloaded all the relevant pornography, perhaps because that was "her fetish"; and that she claimed that it was Mr. Foster's in order to influence the result of a child custody proceeding in which they were engaged.

We note that the order of proof in this case was somewhat unusual and that it is not common for the government to anticipate in its case-in-chief a defendant's theory of defense and to foresee so fully the prospective impeachment of its witnesses. But Mr. Foster's counsel revealed in his opening statement what his defense was going to be and he also said that Mr. Foster would challenge Ms. Foster's credibility because of her prior testimony in pretrial proceedings. The government, moreover, had had a preview of Mr. Foster's theory of the case in a previous proceeding that had ended in a mistrial. Since it developed that defense counsel's case was exactly what he had predicted it would be in his opening statement, most of the evidence that Mr. Foster complains about proved ultimately relevant.

To the extent that the evidence might have been irrelevant or unfairly prejudicial, Mr. Foster is not entitled to relief because he did not make any objection to it when it was offered. We therefore review the matter for plain error and cannot reverse unless the error affected the defendant's substantial rights. *United States v. Scofield*, 433 F.3d 580, 586-87 (8th Cir. 2006), *cert. denied*, 547 U.S. 1215 (2006). After a very careful reading of the record, we are quite clear that the evidence that Mr. Foster asserts was erroneously admitted did not affect his substantial rights because the other, admittedly admissible evidence against him was so overwhelming. For instance, a police officer who had investigated a complaint of the domestic disturbance at the Fosters' residence testified that Ms. Foster told him on the scene that Mr. Foster possessed images of child pornography, and he said that Mr. Foster then admitted that he had downloaded pornographic pictures of children. Another police officer testified that Mr. Foster stated on the same occasion that he had "illegal" images on his computer, and the officer stated as well that when Ms. Foster was searching a closet to find CDs incriminating Mr. Foster, the defendant leaned over to her and whispered, "Baby, don't do it. You don't have to do it. Please don't do it," and other things of like nature. In addition, there was testimony that Mr. Foster told police officers and a Secret Service officer at a police station that he downloaded massive amounts of child pornography and he identified the computer, contents of which were

later introduced, which he used to do it, gave the officers the username and password, and directed them to the relevant website; and the government introduced a written statement of Mr. Foster's admitting to all this.

After his arrest, according to the government's evidence, in an interview with law enforcement officers, Mr. Foster increased his estimate of the amount of underage sexual material he had possessed and talked about how his actions were going to ruin him; he also made admissions of guilt to an agent of the United States Immigration and Customs Enforcement Service. The government, moreover, played an audiotape for the jury of a phone conversation with Mr. Foster in which he acknowledged having possessed child pornography. There was yet more testimony inculpating him, including Ms. Foster's account of how she had seen Mr. Foster viewing pornographic pictures of children and had seen the names of sexually-oriented websites featuring underage participants on his computer. Finally, a computer expert testified that he had discovered thousands upon thousands of pornographic pictures and movies on CDs and on computers to which Mr. Foster had access, one of which carried "Keith Foster" as its account name.

This was not the entire case against Mr. Foster, but this recitation suffices to show – although he denied everything and blamed his wife – that the case against Mr. Foster was so overwhelming that we can't think that there is the remotest chance that he would not have been convicted had the evidence that he complains about not been admitted. He is therefore not entitled to plain error relief.

## II.

Mr. Foster also appeals from the denial of his motion for a new trial, which asserted that his trial counsel was ineffective. But Fed. R. Crim. P. 33(b)(2) (2008) required that such a motion be made within seven days after the return of a verdict. (Some months after Mr. Foster's trial, Rule 33 was amended to give defendants fourteen days to file a new trial motion. *See* Fed. R. Crim. P. 33(b)(2) (eff. Dec. 1,

2009)).  Mr. Foster did not make his motion until six months after the verdict, nor did he make a motion for an extension of time until then.  Although the Supreme Court has held that the deadline for filing such a motion is not jurisdictional and thus may be waived, *see Eberhart v. United States*, 546 U.S. 12, 13, 19 (2005) (per curiam), the government preserved the issue here by raising it in response to Mr. Foster's motion.  The district court correctly concluded that the motion was untimely and did not abuse its discretion by finding no excusable neglect for the delay.  *See* Fed. R. Crim. P. 45(b)(1)(B); *United States v. Boesen*, 599 F.3d 874 (8th Cir. 2010).

Affirmed.

_____