# District of Columbia
# Court of Appeals

**No. 14-CF-987**

MICHAEL POTH,

Appellant,

F I L E D

DEC **29** 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.

CF1-7029-12

UNITED STATES,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE: GLICKMAN and BECKWITH, *Associate Judges*; and FARRELL, *Senior Judge*.

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the matter is remanded to the trial court for further proceedings consistent with this opinion, as the trial court erred in denying appellant an evidentiary hearing on his juror-misconduct claim.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: December 29, 2016.

Opinion by Associate Judge Corinne Beckwith.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CF-987

MICHAEL POTH, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED  12/29/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CF1-7029-12)

(Hon. Russell F. Canan, Associate Judge)

(Argued November 10, 2016                    Decided  December 29, 2016)

*Enid Hinkes*, for appellant.

*Valinda Jones*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney, *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Michael Liebman*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and BECKWITH, *Associate Judges*, and FARRELL, *Senior Judge*.

BECKWITH, *Associate Judge*:  A jury acquitted appellant Michael Poth of second-degree murder while armed[1] for the stabbing death of Philip Bushong, but found him guilty of the lesser included offense of voluntary manslaughter while

---

[1]  D.C. Code §§ 22-2103, -4502 (2012 Repl.).

armed.[2]  After trial, defense counsel discovered that two of the jurors had omitted

material information in their *voir dire* responses and filed a motion for new trial

under Super. Ct. Crim. R. 33.  The trial court denied the motion on the ground that

Mr. Poth had forfeited the juror-misconduct claim by failing to exercise diligence

in discovering the claim's factual basis and bringing it to the court's attention prior

to the jury's verdict.  We conclude that the trial court erred in rejecting Mr. Poth's

juror-misconduct claim on lack-of-diligence grounds, and we remand to allow the

trial court to decide the merits of Mr. Poth's claim.

## I.

After trial, defense counsel conducted a "general Google search" of all of the

jurors' names[3] and discovered that one of the jurors, Juror 061, was a registered

sex offender with a felony record and that another juror, Juror 703A, had been a

---

[2]  D.C. Code §§ 22-2105, -4502 (2012 Repl.).

[3]  Defense counsel had been given a list of the jurors' names at the beginning of *voir dire*.  He copied the names into his notebook before returning the list at the end of *voir dire*.  When the issue of juror misconduct later arose, the trial court noted that pursuant to Super. Ct. Admin. Order 95-11, the jurors' names were public information.  The court also noted that the administrative order required the parties to be provided during *voir dire* with a confidential "Juror Panel Roster" that contained the jurors' addresses, ages, occupations, and work addresses, but that the roster provided to the parties in this case lacked the jurors' home and work addresses.

complainant in an assault case in 1999. The government subsequently discovered and disclosed that Juror 061 had several additional convictions and that Juror 703A had also been a complainant in a 2000 assault case.

This information was significant because it was inconsistent with Juror 061's and Juror 703A's responses during jury selection. At *voir dire*, the prospective jurors had sworn an oath to tell the truth. They were given a form listing eighteen questions, which the court also read aloud to them. One of the questions was whether the juror, "a close family member or a close friend . . . ha[d] ever been a victim of a crime, a witness to a crime or charged, arrested, brought to court for a crime." Neither Juror 061 nor Juror 703A circled "yes" for this question or any other question on the form. The court also called the jurors individually to the bench for further questioning by the court and counsel. The court inquired of Juror 703A as follows:

> Q.  Yes, ma'am, I noticed that like many other panel members you didn't answer any questions. Were my questions clear enough for you?
>
> A.  Yes.
>
> Q.  Do you have any questions about any of my questions?
>
> A.  None at all.

The court questioned Juror 061 similarly and received the same responses.[4]

Mr. Poth subsequently filed a motion for a new trial. At a hearing on Mr. Poth's motion, counsel for Juror 703A represented that her client had forgotten about being a complainant in the two assault cases. According to counsel, those assaults "happened a long time ago," and the perpetrator—"[i]t was someone that she had a relationship with"—was deceased. Counsel also represented that the two assaults "did not in any way [a]ffect her deliberations." Counsel for Juror 061 stated that Juror 061 would assert his Fifth Amendment privilege against self-incrimination if he were called to testify about his failure to disclose his criminal history.

The trial court declined to hold an evidentiary hearing on the motion, ruling that Mr. Poth's claim was barred due to his counsel's failure to exercise due diligence. The court reasoned that although "defense attorneys are [not], generally speaking, required to conduct pre-verdict juror investigations, . . . [i]t is the Court's view . . . that if such an investigation is conducted, it must be done in such a

---

[4] Juror 061 did disclose a felony conviction on a juror-qualification questionnaire, but this questionnaire was not provided to the trial court or the parties.

manner that will allow the trial judge time to take appropriate corrective action."[5]

## II.

Before addressing whether the court erred in imposing a due-diligence requirement on Mr. Poth, we turn first to a threshold procedural matter. The government argues that Mr. Poth's motion for a new trial was time-barred by Super. Ct. Crim. R. 33, which, at the time of the 2013 trial, provided that a motion for a new trial based on grounds other than newly discovered evidence "may be made only within 7 days after the verdict or finding of guilty or within such further time as the Court may fix *during the 7-day period*" (emphasis added).[6] Defense

---

[5] The trial court noted that the question whether a defendant must demonstrate due diligence in order to bring a motion for a new trial based on evidence of juror misconduct discovered post-verdict through an internet investigation has not yet been addressed by our court. The trial court gave the issue careful consideration, relying heavily on relevant case law from other jurisdictions. *See, e.g.*, *Burden v. CSX Transp., Inc.*, No. 08-CV-04-DRH, 2011 WL 3793664, at *5–14 (S.D. Ill. Aug. 24, 2011); *Johnson v. McCullough*, 306 S.W.3d 551 (Mo. 2010).

[6] Super. Ct. Crim. R. 33 has since been amended to say that a "motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty." The provision requiring the trial court to fix the filing date within seven days of the verdict has been deleted to conform with Fed. R. Crim. P. 33. *See* Fed. R. Crim. P. 33 advisory committee's note to 2005 amendment ("[T]he amendment deletes the language regarding the court's acting within seven days to set the time for filing. . . . [T]he court itself is not required to act on [a] motion [for an extension] within any

(continued…)

counsel did not file the motion for a new trial within seven days of the jury's verdict. Counsel did move for an extension of time within seven days of the verdict, but the court did not grant the motion until after the seven-day period had lapsed. The government did not object at that time; nor did it oppose the defense's second motion for an extension, which the court granted. The government objected to the defense's third and final request for more time, but the court overruled the objection and granted that motion as well. When Mr. Poth finally filed the motion for a new trial, the government argued that Super. Ct. Crim. R. 33's time limit was jurisdictional and could not be forfeited and that even if the time limit could be forfeited, the government's opposition to the third extension had been sufficient to preserve its right. The trial court rejected both arguments, and the government renews them in this appeal.

The time limit in Super. Ct. Crim. R. 33 is not jurisdictional. Jurisdictional rules, "when not constitutionally mandated, are an exercise of legislative power and so must be grounded in statutes or other legislative acts." *Neill v. D.C. Pub. Employee Relations Bd.*, 93 A.3d 229, 238 (D.C. 2014). Rule 33 lacks such a statutory basis. It is instead a "claim-processing" rule—a rule devised by the court

---

(…continued)
particular time.").

"to promote the orderly process of litigation by requiring that the parties take certain procedural steps at certain times"—and thus its requirements can be forfeited or waived. *Id.* (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). And while this court previously held that Rule 33's time limit was jurisdictional, *see Diamen v. United States*, 725 A.2d 501, 506 (D.C. 1999), subsequent legal developments have cast doubt upon that holding. In *Smith v. United States*, 984 A.2d 196 (D.C. 2009), we explained that "the jurisprudential basis" of our cases holding that Super. Ct. Crim. R. 35 (b)'s time limit was jurisdictional had been "'substantially undermined' by subsequent decisions of the Supreme Court"—namely, *Eberhart v. United States*, 546 U.S. 12 (2005), and *Bowles v. Russell*, 551 U.S. 205 (2007). *Smith*, 984 A.2d at 200 (quoting *Lee v. United States*, 668 A.2d 822, 828 (D.C. 1995)). We adopt this reasoning,[7] which

---

[7] In *Dean v. United States*, 938 A.2d 751 (D.C. 2007), a case that postdates *Eberhart* and *Bowles*, the court quoted the holding from *Diamen*, 725 A.2d at 506, that Super. Ct. Crim. R. 33's time limits are jurisdictional. *Dean*, 938 A.2d at 767. But as the court explained in *Smith*, the *Dean* court did not "cite to any of the recent Supreme Court precedent in making [its] ruling, nor was the issue of 'jurisdictional vs. claim-processing' directly before [the court], because the objection to the time-limit violation was preserved at trial." 984 A.2d at 201 n.5. "The rule of *stare decisis* is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question," *Murphy v. McCloud*, 650 A.2d 202, 205 (D.C. 1994) (quoting *Fletcher v. Scott*, 277 N.W. 270, 272 (Minn. 1938)), and we therefore are not bound by *Dean*.

applies here with even more strength, given that *Eberhart*'s holding directly concerned Fed. R. Crim. P. 33, *see* 546 U.S. at 13, on which Super. Ct. Crim. R. 33 is patterned.

Because Super. Ct. Crim. R. 33's time limit is not jurisdictional, the government can forfeit or waive it. The government cites a number of federal cases that it contends stand for the proposition that "the government . . . preserve[s] its objection to an untimely filing under a claim-processing rule if the objection is raised in the government's response to the challenged pleading." *See United States v. Felder*, 529 F. App'x 111 (3d Cir. 2013); *United States v. Foster*, 623 F.3d 605, 607–08 (8th Cir. 2010); *United States v. Miranda*, 220 F. App'x 965 (11th Cir. 2007). But these cases indicate that where a defendant fails to request an extension and then subsequently files an untimely motion for a new trial, the government does not forfeit its objection so long as it includes that objection in its response to the motion. That rule has no application here, where Mr. Poth requested and was granted an extension without any objection by the government, and—more fundamentally—where Mr. Poth's initial request for an extension contained the following representation, which the government did not contradict: "Government counsel has no objection provided that the government is given a proportional

extension to respond." The government has waived[8] its right to assert the seven-day time limit.

## III.

A defendant is entitled to a new trial in "the interests of justice" if "'exceptional circumstances' prevented the defendant from receiving a fair trial." Super. Ct. Crim. R. 33; *Tyer v. United States*, 912 A.2d 1150, 1167 (D.C. 2006) (quoting *Huggins v. United States*, 333 A.2d 385, 387 (D.C. 1975)). It is beyond question that a defendant who was deprived of his or her Sixth Amendment right to trial "by an impartial jury" was prevented from receiving a fair trial. Violation of this right is a "structural defect affecting the framework within which the trial proceeds," and without an impartial jury, "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *Hughes v. United States*, 689 A.2d 1206, 1210 (D.C. 1997) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). The presence of even a single actually biased juror on the jury violates the defendant's right to an impartial jury. *Young v. United States*, 694

---

[8] "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

A.2d 891, 894 (D.C. 1997).

In *Young*, the court explained the procedure for investigating juror-bias claims based on allegations of misrepresentations during *voir dire*. When a defendant shows that a juror responded falsely or omitted material information in his or her *voir dire* responses, the defendant is entitled to "a hearing in which the defendant has the opportunity to prove actual bias" on the part of the juror. *Young*, 694 A.2d at 894 (quoting *Smith v. Phillips*, 455 U.S. 209, 215 (1982)). The defendant is entitled to a new trial if he or she demonstrates at the hearing that the "juror failed to answer honestly a material question" and that "a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *accord Young*, 694 A.2d at 894. The second requirement is satisfied if "'the [trial] court . . . would have granted the hypothetical challenge' if it had known the true facts." *United States v. Daugerdas*, 867 F. Supp. 2d 445, 470 (S.D.N.Y. 2012) (quoting *United States v. Stewart*, 433 F.3d 273, 304 (2d Cir. 2006)), *rev'd in part on other grounds sub nom. United States v. Parse*, 789 F.3d 83 (2d Cir. 2015); *see also Young*, 694 A.2d at 894 (stating that "the juror's failure to disclose this information, particularly if deliberate, may indicate a desire to serve on [the] jury for some improper purpose," or "the information the juror failed to disclose may indicate some bias against" the

defendant).

Here, Mr. Poth proffered evidence that Juror 061 and Juror 703A had omitted material information[9] during *voir dire*. It is possible that these omissions were inadvertent or were not motivated by prejudice. It is also possible that one or both of the jurors were biased against Mr. Poth. Such a prospect, if realized, would have deprived Mr. Poth of a fundamental right in our criminal justice system, and Mr. Poth was therefore entitled under *Young* to an evidentiary hearing to probe the jurors' bias.

The trial court's denial of this hearing on the ground that Mr. Poth's counsel had failed to exercise due diligence was an error of law.[10] It may be that where a "defendant *knows* of possible juror misconduct during trial but does not bring it to the attention of the trial court before the verdict is returned, he waives the right to a new trial on that ground."[11] *Peña v. State*, 294 P.3d 13, 23 (Wyo. 2013) (emphasis

---

[9] Alternatively, the jurors' failure to circle "yes" on the list of eighteen questions beside the question about experience with the criminal justice system could be characterized as an affirmative misrepresentation.

[10] "We review the denial of a Rule 33 motion for abuse of discretion." *Jones v. United States*, 124 A.3d 127, 129 (D.C. 2015). A court abuses its discretion when it relies on an erroneous legal principle. *D.C. Office of Tax & Revenue v. ExxonMobil Oil Corp.*, 141 A.3d 1088, 1095 (D.C. 2016).

[11] Some courts have also held that where defense counsel fails to follow up
(continued…)

added); *see also United States v. Costa*, 890 F.2d 480, 482 (1st Cir. 1989); *United States v. Edwards*, 696 F.2d 1277, 1282 (11th Cir. 1983). But a defendant otherwise has a right to rely on jurors' responses under oath.[12] *See McDonough*, 464 U.S. at 554 ("The necessity of truthful answers by prospective jurors if th[e *voir dire*] process is to serve its purpose is obvious."). Where, as here, the defense had no actual knowledge that jurors had omitted material information and only became aware of this circumstance after conducting an extrinsic investigation, we will not find waiver or forfeiture of the right to raise a claim of juror misconduct.[13]

---

(…continued)

on *voir dire* responses that reasonably suggest the possibility of bias, the defendant cannot raise the issue of juror bias post-trial. *United States v. Johnson*, 688 F.3d 494, 501 (8th Cir. 2012); *In re Nash*, 614 A.2d 367, 372 (Vt. 1991); *but see United States v. Parse*, 789 F.3d 83, 118 (2d Cir. 2015) ("A ruling that a litigant has waived a right because he failed to acquire sufficient information to make an informed decision is based on an erroneous view of the law." (brackets, internal quotation marks, and citation omitted)).

[12] The government argues that defense counsel should be expected to consult "readily available online public" information and that counsel's failure to do so during trial precludes the assertion of a juror-misconduct claim based on such information after trial. Although it is becoming increasingly common for attorneys to conduct internet investigations of jurors and potential jurors, *see generally* Eric P. Robinson, *Virtual Voir Dire: The Law and Ethics of Investigating Jurors Online*, 36 Am. J. Trial Advoc. 597 (2013), this court has not previously held that attorneys have a duty to conduct an external investigation of the jurors or potential jurors during trial or *voir dire*, and we do not do so now.

[13] We are not persuaded by the government's argument that we must impose

(continued…)

We therefore remand this matter to the trial court.[14]

---

(…continued)

a due-diligence requirement to discourage sandbagging. The existence of an actually biased juror on the jury creates immediate and unquestionable prejudice for the defendant. Given the defendant's uncertain prospects post-trial of satisfying his or her burden under *Young* and obtaining a remedy for this prejudice, it is improbable that a defendant who, during trial, acquires information furnishing a reason to believe that a juror is actually biased would sit on this information rather than immediately seek to have the juror removed. *See Henderson v. United States*, 133 S. Ct. 1121, 1128 (2013) ("[I]t is normally to the advantage of counsel and his client to get the error speedily corrected.").

[14] Mr. Poth has failed to convince us that the government violated his right to due process under *Brady v. Maryland*, 373 U.S. 83 (1963). Mr. Poth argues that the United States Navy's failure to respond to a subpoena for Mr. Bushong's medical records until after the trial was finished constituted the suppression of material, exculpatory information by the government. *See Vaughn v. United States*, 93 A.3d 1237, 1254 (D.C. 2014). The records would have shown that over the course of his military service, Mr. Bushong was treated for injuries resulting from two different assaults, and Mr. Poth asserts that these records would therefore have supported his self-defense theory. We conclude that these records were not material to the defense. The records would perhaps have been relevant to who was the initial aggressor in the confrontation between Mr. Poth and Mr. Bushong. *See Shepherd v. United States*, 144 A.3d 554, 558 (D.C. 2016). But the records' probative value was very low given that they did not reveal whether Mr. Bushong was the aggressor in the prior assaults, and there was already substantial evidence in the trial record showing that Mr. Bushong was the aggressor. In fact, all of the eyewitnesses agreed on this point. There is thus not a reasonable probability that the alleged suppression of these records affected the trial outcome.

Mr. Poth also argues that the government violated *Brady* by failing to disclose a witness statement and the grand jury testimony of two witnesses prior to trial. While the government undoubtedly "has an obligation to disclose [*Brady*] information to the defense in a timely and complete manner," *Vaughn*, 93 A.3d at 1256, Mr. Poth was not prejudiced by the late disclosures in this case. Defense

(continued…)

## IV.

More than three years have passed since Mr. Poth's trial, and it may be that "the passage of time" has "impair[ed the] trial court's ability to make a reasoned determination of" Juror 061's and Juror 703A's bias against Mr. Poth, and that it will be impossible to afford Mr. Poth the hearing to which he was entitled. *Robinson v. United States*, 878 A.2d 1273, 1291 (D.C. 2005) (quoting *Brown v. Kelly*, 973 F.2d 116, 121 (2d Cir. 1992)). We leave it to the trial court to decide in the first instance whether it is possible to hold a fair evidentiary hearing or whether Mr. Poth's new-trial motion must be granted outright. *See id.* If it is possible to have a proper evidentiary hearing on Mr. Poth's juror-misconduct claim, the trial court should—in evaluating the evidence developed at such a hearing—

---

(…continued)
counsel made effective use of the statement and grand jury testimony in his cross-examination of the government's witnesses, and he was sufficiently aware of the gist of the statement and the testimony to include a summary in his opening statement. Mr. Poth has not claimed with any specificity that earlier disclosure would have assisted his counsel in investigating the case or preparing for trial, and on the record in this case we see no basis for concluding it would have.

Finally, because we accept Mr. Poth's argument that the trial court erred in denying his juror-misconduct claim on the ground that his trial counsel failed to exercise due diligence, we do not need to decide Mr. Poth's claim that his trial counsel rendered ineffective assistance, *see Strickland v. Washington*, 466 U.S. 668 (1984), by failing to investigate and raise his juror-misconduct claim pre-verdict.

nonetheless be cognizant of "the usual risks of imprecision and distortion from the passage of time." *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003).

Another issue that may arise on remand is that one or both jurors may be unavailable to testify. This is not a speculative concern: Juror 061's counsel stated that Juror 061 would invoke his Fifth Amendment right against self-incrimination if called to testify. In the absence of testimony by Juror 061, in particular—or in the absence of other evidence satisfactorily explaining his omission of significant information—the most reasonable inference would be that Juror 061's omission was knowing or intentional. *Cf. Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1288–89 (11th Cir. 2005) (explaining that although "[i]n some circumstances a juror may have forgotten about a conviction or . . . not realized that her conviction was covered by [a] question," there was no "reasonable possibility" that a juror who had been convicted of murder and spent three years in prison "could have honestly doubted that she was covered by the question"). As other courts have concluded, intentional misrepresentations and omissions, in the absence of countervailing evidence demonstrating a non-bias motive, are strong "evidence that the juror was likely incapable of rendering a fair and impartial verdict." *People v. Dunoyair*, 660 P.2d 890, 895 (Colo. 1983); *see also United States v. Colombo*, 869 F.2d 149, 151–52 (2d Cir. 1989) ("[Lying] exhibited a

personal interest in th[e] . . . case that was so powerful as to cause the juror to commit [perjury,] a serious crime."); *In re Hitchings*, 860 P.2d 466, 479 (Cal. 1993) ("[W]hen a juror conceals material information on voir dire, 'that information establish[es] substantial grounds for inferring that [the juror] was biased . . . despite . . . protestations to the contrary.'" (quoting *People v. Price*, 821 P.2d 610, 650 (Cal. 1991)) (alterations and omissions in original)).[15]

## V.

For the foregoing reasons, we conclude that the trial court erred in denying Mr. Poth an evidentiary hearing on his juror-misconduct claim. We remand to the trial court for further proceedings consistent with this opinion.

---

[15] The government, quoting *Young*, 694 A.2d at 895, argues, with respect to Juror 061, that "[s]omeone previously convicted of a crime is not necessarily more likely to be biased against the defendant; 'the opposite is more intuitive.'" But in *Young*, the trial court credited the juror's testimony that his omission of his criminal history was inadvertent. *Id.* at 893. Accordingly, the *Young* appellant raised the argument that even though the juror did not lie, the court should "presume . . . bias[]" because the juror's felony conviction rendered him statutorily ineligible to serve on a jury. *Id.* at 894. The language quoted by the government comes from the court's analysis disposing of that argument. *See id.* at 894–95. In the present case, by contrast, Mr. Poth has not had an opportunity to put Juror 061 on the stand and there would be no basis for the trial court to infer that Juror 061's omissions were unintentional. At the same time, if Juror 061 can be questioned, then that juror's disclosure of a prior felony conviction on the juror-qualification form, *see supra* note 4, may be a factor relevant to the determination of bias.

*So ordered.*